*262
 
 Mr. Justice NELSON
 

 delivered the opinion of the court.
 

 This is an appeal from a decree of the Circuit Court of the United States for the District of Columbia.
 

 The bill was filed in the court below, by the respondents, against the appellant, Pemberton, liquidator of the Merchants’ Insurance Company,'in the city of New Orleans, representing the interest of that, company, which was insolvent, for the purpose of establishing a title to certain moneys in the possession of the Government, which hadbeea received under the convention between the United States and, Great Britain, of the 8th of February, 1853. The money had been awarded by the umpire, under that convention, to the company, which had been subrogated to the rights of one of the claimants for compensation against Great Britain, in the case of the brig Creole. The umpire allowed to the company $28,460. The complainants below set up, in their bill, a title to one-half of this fund, as the agents and attorneys of Pemberton in the prosecution of the claim.
 

 The right rests upon the following agreement, entered into between them and the defendant (Pemberton) at New Orleans, dated the 23d of December, 1851:
 

 “For and in consideration of services’ rendered, and to be rendered, by James G. Berret, Henry D. Johnson, and E. Lockett, of Washington city, D. C., in the prosecution of our claims for the value of slaves freed at Nassau, N. P., which we had to pay for, we do hereby agree to allow to said Berret, Johnson, and Lockett, their heirs or assigns, one-half of any or all such sums of money, principal and interest, as may be recovered on. account of our said losses, i.t being understood that the said Berret, Johnson, and Lockett, are to use their best exertions in the prosecution of said claim, and that no allowance whatever, as expenses or compensation for their services, is to be made by us to the said Berret, Johnson, and Lockett,, unless our said claim shall be allowed, in Whole or in part. Witness our hand and seal, at New Orleans, this 23d day of December, in the year of bur Lord 1851.”'
 

 The claims referred to in this agreement originated as far back as the year: 1841, in consequence of the unwarrantable
 
 *263
 
 interference of the public authorities at Nassau, in the island of New Providence, one of the Bahama Islands, belonging to Great Britain, and liberating a cargo of slaves, who were on a voyage from Virginia to New Orleans, and who had mutinied, overcome the officers, and carried the vessel into that port.
 

 .The persons interested in the slaves, of which they were deprived' by this interference, immediately appealed to their own Government for redress. A correspondence was opened between this Government and Great Britain on the subject, which continued down to. the time of the convention already mentioned, of the 8th of February, 1853.
 

 This convention provided for the, appointment of a board of commissioners, one to be named by each Government, and the two to appoint an umpire, to decide upon all claims in which a difference of opinion should o(?cur.
 

 The board sat in the city of London, and were bound, according to the terms of the convention, to receive and peruse all written documents or statements which might be presented to them, by or .on behalf of their respective Governments, in support of or in answer to any claim ; and to hear, if required, ope person.on each side, in behalf of each Government, as counsel or-agent for such Government, on each separate claim. Each Government appointed an agent to represent it before the.board ; and, as we have said, the umpire allowed to* the insurance company $28,460.
 

 It is-insisted, on behalf of the defendant, (Pemberton,) that this contract, entered into with complainants in 1851, had reference to' the solicitation of claims before, and allowance by, the¡ Government, at the city of Washington; that they were employed-as gentlemen residing at that place, engaged in business of this character; and that the. convention between the. two Governments, the appointment of a board of commissioners, and prosecution of the claims against Great Britain before it, under the authority of the United States, put an end to the contract Although its terms are general, and open to some difficulty as to the real meaning and intent of. the parties, we are inclined to concur in this, view of it. We
 
 *264
 
 think it could hardly have been within the contemplation of either of the parties, that the prosecution spoken of in the argument was a prosecution or solicitation of claims against the foreign Government, or in a tribunal sitting there, and before which this Government had taken upon itself the duty of the prosecution. "We are satisfied -these agents were under no obligation, according to the true intent of the agreement, to follow these claims to London, and prosecute them there; and if not, it is quite clear the transfer of them to the commission there put an end to the agreement. And this seems to have been the view taken of it by the parties themselves, as manifested by their conduct after the appointment of the commission.
 

 By, the third article of the convention, the claims were to be presented before the board within six months from the day of its first sitting, unless a good reason could ‘be given for the delay. The bóard first met in London on the 15th of September, 1853; and'on the 15th of October it adopted rules and regulations in respect to the proceedings before it, and, among others, required all claims to be presented within six- months from the.-15th of September, the day of its first sitting.
 

 Now, the firsff step taken by these complainants in behalf of the claims of Pemberton, under the convention, was a letter written to him by Lockett, dated December 15, requesting that a power of attorney should be given to Johnson, to act for him before the commission. This was three months after, the commencement of its sittings, and after half the period had expired within which the claims, were required to be presented. It does 'not appear that this letter was answered by Pemberton.
 

 The next step taken was á letter from Johnson himself, dated at Washington, 22d of March, 1854, in which he announces that he .had prepared a memorial on behalf of .the claims ofithe insurance company, and was ready to forward it to the commissioners, in London; This was seven days after the expiration of the six months.
 

 In'the mean time, Pemberton had employed agents residing in London to attend to his claims, and who, it appears, had the charge and management of the business until the close of the commission.
 

 
 *265
 
 What is very material, also, in this letter of Johnson of the 22d of March, he there states, in respect to the situation of his two associates, as an-inducement-to Pemberton to. give him, individually, the power of attorney — that Lockett is absent, and that Berret was unable to attend to the business,-having been appointed postmaster of the city ; and then proposes to conduct the business himself alone, for the compensation of twenty-five per centum of the money recovered, the half only of what is now claimed under the agreement of 1851. -It does not appear that any answer was returned to this letter, doubtless for the reason that .other agents had already been employed.
 

 It is true,, that Johnson drew up the memorial to the. commissioners, on behalf of Pemberton, as above -mentioned, but without any authority from him, and swore to it, at Washington, on the 17th of April, 1854, in which he endeavored to explain the delay in presenting the claim; and forwarded the' same from this country on the 29th of May following. But ■ the subject had already been brought to .the notice of-'the Government agent, and before the board of commissioners, as'early as the 23d of that month, by the agents of Pemberton in London. This memorial, therefore, was of no particular importance. ■
 

 It appears from the report of the proceedings under the commission, and-of its decisions, communicated to Congress by the President, 11th of August, 1856, (Senate Does., vol. 15, 1855-’6,) that there were six separate claimants, besides Pemberton, for compensation arising out óf the case of the Creole, and all depending, substantially, upon the same facts. And there were, also, the cases of the brig Enterprise and schooner' Hermosa, involving principles similar'to those upon which the' reclamation depended in the case of the Creole. All the parties whose claims arise out of the case of the Creole were equally interested in furnishing the proofs upon which the general claim against the British Government rested; and the three' vessels were interested in common, as to the principles of international law Jhat-should govern the decision of the board of commissioners.
 

 
 *266
 
 , The Government agent and commissioners took this view of ..these several claims, and but one argument was made in all of them, and that in the case of the brig Enterprise, and but one opinion delivered by the commissioners. As they disagreed, a second argument was made before the umpire.
 

 The preparation of the claim of Pemberton, beyond the ‘ proofs of the interest of his company in the case of the Creole, was a very, trifling matter; and even these proofs had been already furnished, to this Government, at the time the appeal was. made there for redress. And as it respects .the questions ■ of international law involyed in these cases, they had been the subject of repeated discussion between this Government and Great Britain, and also in Congress, by some of the most distinguished statesmen and jurists of the country; and. the/preparationfor the argument of the claim before the board of com- . missioners required little else than the labor of digesting and reproducing the principles and reasoning to be found in these discussions.
 

 Eor the reasons above given, we are satisfied the agreement and proofs in the case furnish no legal or just ground for a claim to the sum of- money awarded by the court below, and that the decree should be reversed, and the proceedings remit ■ ted,, with directions to enter a decree dismissing the bill.