[No 3480.]

# R. J. PRESTON, R. M. PRESTON AND JAMES M. PRESTON *v.* WILLIAM HILL AND EZEKIEL DENMAN.

POWER OF ATTORNEY TO COMPROMISE AN ACTION.—An attorney at law, merely by his retainer as such, has no power to compromise an action and consent to entry of a judgment in accordance with a stipulation, if his client, with the knowledge of the adverse attorney, objects to it, and such objection is brought to the attention of the court before the judgment is entered.

APPEAL from the District Court, Seventh Judicial District, County of Marin.

Robert J. Preston and his two sons, J. M. and R. M.

| 50 | 43 |
| 83 | 556 |
| 50 | 43 |
| 95 | 288 |
| 50 | 43 |
| a110 | 189 |
| 50 | 43 |
| 112 | 609 |
| 50 | 43 |
| a129 | 689 |
| 50 | 43 |
| f130 | 42 |

44 PRESTON *v.* HILL. [Sup. Ct.

Preston, the plaintiffs here, were the claimants of, and were in possession of a tract of land known as Preston's Point, lying on the bay of Tomales, county of Marin. The tract contained about eight hundred acres. A part of it was dry land, being a portion of a larger tract known as the "Rancho Bolsa de Tomales," and a part was swamp and overflowed land, lying on the bay adjacent thereto. The rancho had been rejected as a Mexican grant, and the Prestons claimed the right to pre-empt the land formerly included in the grant, and claimed the swamp and overflowed land by purchase from the State. The Prestons had mortgaged the land to secure a note on which the sons were sureties for the father. The mortgage was being foreclosed, when, June 6, 1865, defendants, Hill and Denman, and Harrison Meacham, and Caleb Railsback, at the request of the father, loaned him eleven thousand and twenty-five dollars to redeem the land from the mortgage. To secure the loan, the three Prestons gave the parties a quitclaim deed of the land. On the 13th of June following, Hill, Denman, Meacham and Railsback, gave the father a bond to reconvey the premises if he repaid the money on or before the 13th of September, 1865, with three per cent. per month interest, together with such sums as the obligors should expend in securing title to the premises, and in building fences and making repairs to buildings and wharves. On the 2d day of December, 1865, the Prestons executed to the obligors in the bond a lease of the land for three years, reserving a rent of fifty dollars per annum, and the right to occupy the dwelling-house and garden until the first day of April, 1866. The lease contained a clause that the Prestons might terminate it by paying twelve thousand eight hundred and eighty-seven dollars, with interest from date at two per cent. per month. December 16, 1865, Meacham and Railsback sold to Hill and Denman their interest in the loan and property. April 16, 1866, Hill and Denman commenced an action against the Prestons to foreclose the deed as a mortgage. The Prestons answered, setting up that the agreements to pay two and three per cent. per month were not in writing, and therefore void, and also claiming that

the plaintiffs had realized several thousand dollars from the use of the premises and the wharf thereon, and that the defendants had sustained damages in other matters, all of which they claimed to set off against the amount due on the mortgage. The plaintiffs, in their complaint, claimed that by the agreement of the parties, the deed which they received was to be a bargain and sale deed, but that, by the mistake of the attorney, it was made a quitclaim deed, and they asked to have it reformed. The case came on for trial on the 5th day of March, 1867. The findings, recited in the opinion, state what occurred on the trial. The stipulation referred to in the findings was as follows:

"It is stipulated that a decree be entered in the above-entitled action, of foreclosure and sale of the land described in the complaint, in fee, together with all title now existing in the defendants, or either of them, or which they may hereafter acquire, under the United States government, and that the amount due be stated, as of this day, at eleven thousand five hundred dollars, for which judgment should be entered, with one and one-fourth per cent. interest per month thereon, all payable in gold coin of the United States. The said judgment being in full of all claim on part of either party against the other; in said decree stipulations to be inserted protecting plaintiffs in possession of said land, during an existing lease up to December 2, 1867. No personal judgment to be entered.

"A. W. THOMPSON,
"Attorney for Plaintiffs.
"PATTERSON, WALLACE & STOW,
"Attorneys for Defendants.
"SAN RAFAEL, March 5, 1867."

A decree was entered on the stipulation. It will be observed that the stipulation allowed the decree and sale under it to carry the after-acquired title of the Prestons. They claimed that, as the deed which they gave was only a quitclaim deed, a decree of foreclosure ought not to carry an after-acquired title. The plaintiffs, on the 29th of May, 1867, commenced this action, which was a suit in equity, to obtain a new trial in the foreclosure suit. The

court below found, beside the facts recited in the opinion, that the "compromise, settlement and stipulation were injurious to the defendants in the said foreclosure suit, the plaintiffs in this action, and prevented them from availing themselves of the several defenses in their answer in the said foreclosure suit."

The court also found "that there was no writing signed by the said Prestons, or either of them, to pay the amount of the said loan in gold coin, nor to pay interest beyond the legal rate of interest;" and "that it was not averred nor proved that the said Patterson was insolvent;" and "that the said Patterson, or the plaintiffs in the said foreclosure suit, or their attorneys, were not guilty of any deceit, fraud, trick, collusion or artifice in procuring the said stipulation, or in the entry of the said decree."

The court below refused to grant a new trial, and the plaintiffs appealed.

The other facts are stated in the opinion.

A former appeal in this case is reported in 38 Cal. 686.

*S. F. & L. Reynolds*, for the Appellants.

Treating Patterson as merely the attorney, employed in the usual way to conduct a suit, he had no authority to enter into any compromise or settlement of the foreclosure suit, without the consent of his clients, and especially against the express objection and refusal of such clients. (*Cannop* v. *Callis*, 2 Exch. R. 484; *Fray* v. *Vowles*, 1 Ellis & Ellis, 839; *Stackhouse* v. *O'Hara*, 14 Penn. 88; *Huston* v. *Mitchell*, 14 Serg. & R. 307; *Seward* v. *Loomis*, 21 Conn. 254.)

The defendants, through their attorney and counsel, knew at the time of the negotiations, and the making the stipulation, and entry of the decree, that Patterson had no authority from his clients to make the compromise and stipulation, and that the Prestons were opposed to any such compromise. They knowing that fact, and with that knowledge consummating that compromise and stipulation to the injury of the Prestons, it was a collusion between Patterson and the attorney and counsel of plaintiffs to effect a positive

injury to the Prestons. Such collusion is a fraud against which a court of equity will, without hesitation, relieve. (*Garth* v. *Cotton*, 1 Dickens, 217, 218; Kerr on Frauds, 42, 43; *Garth* v. *Cotton*, 3 Atk. 757; *Bromley* v. *Smith*, 26 Beav. 691; *Spackman's Case*, 3 L. J. Ch. 321.)

*F. D. Colton* and *E. S. Lippit*, for the Respondents.

If the Court should be of the opinion that the findings show anything that may be material, then we object to the sustaining of this action on the ground that the Prestons had an ample remedy in the action in which the stipulation was made.

If Mr. Patterson exceeded his power as an attorney in making the stipulation, the decree would have been reversed on appeal; so if the decree exceeded the stipulation. Having this remedy, they cannot resort to any other. (*Haight* v. *Gay*, 8 Cal. 297; *People* v. *Shepard*, 28 Cal. 115.)

Mr. Pearce, of counsel for the Prestons, knew of the stipulation before it was filed. The Prestons knew of it before the decree was entered. They could have dismissed Mr. Patterson and had the stipulation set aside, or could have proceeded under the sixty-eighth section of the Practice Act. Where the Practice Act provides a remedy, that remedy must be exclusive. Otherwise the Practice Act is useless, and should be dispensed with entirely. We cite the following additional authorities: *Holmes* v. *Rogers*, 13 Cal. 191; Opinion on rehearing, *Waggoner* v. *McKinney*, 1 A. K. Marshall, 479; *Murray* v. *Graham*, 6 Paige, 622; *Garvin* v. *Squires*, 4 Eng. Ark. Rep. 533; Willard's Eq. Juris. 356–7; *Critchfield* v. *Porter*, 1 Ohio Cond. 658; 3 Graham & Waterman on New Trials, Chap. 17, Div. 11; *Mastick* v. *Thorp*, 29 Cal. 445.

The attorney has the power to make a stipulation like the one in question. (*Hart* v. *Spalding*, 1 Cal. 214; *Suydam* v. *Pitcher*, 4 Cal. 280; *Holmes* v. *Rogers*, 13 Cal. 191; *Sampson* v. *Ohleyer*, 22 Cal. 210; *Board of Commissioners* v. *Younger*, 29 Cal. 149; *Swinfen* v. *Swinfen*, 37 Eng. Law and Eq. 327–443.)

By the Court, CROCKETT, J.:

This cause was here on a former appeal, which was decided at the October term, 1869. On that appeal it appeared that at the trial, the plaintiffs offered evidence tending to support the defenses set up in their answer in the foreclosure suit; but the court below excluded the evidence, and this ruling was the principal error relied upon. We reversed the judgment upon this ground; and this was the only point decided on that appeal. On the return of the cause to the District Court, it was tried anew and a judgment entered for the defendants, from which the plaintiffs appeal on the judgment-roll.

The point chiefly discussed by counsel is whether, upon the facts set forth in the findings, the consent decree entered in the foreclosure suit, upon the stipulation signed by Mr. Patterson, the attorney of record for these plaintiffs (who were defendants in that action), is obligatory upon them, assuming that there was no fraud or collusion in the transaction.

The facts in respect to the stipulation and the entry of the decree, are set forth in the following findings:

"That upon the said trial, which was in the forenoon of that day, the plaintiffs in the said foreclosure suit examined on their part four witnesses. When and thereupon, and at about one o'clock of that day, a short recess was directed by the then judge of the court. That soon after the recess was directed, a compromise was suggested by some persons who were not parties to the suit.

"That at once, without the knowledge or consent of the said defendants in said foreclosure suit, plaintiffs in this suit, William H. Patterson, one of the attorneys of the said defendants in said foreclosure suit, and who had, as counsel, the management of the defense therein, commenced and entered into negotiations with the plaintiffs in said foreclosure suit, defendants in this suit, for a compromise of the said foreclosure suit.

"That the said Patterson made and received propositions for a compromise without any directions, consent or knowl-

edge of the said defendants in said foreclosure suit, and without consulting them, or either of them, about such propositions, and when the propositions were made known to the said Robert J. Preston, by the said Patterson, he, the said Robert J. Preston, peremptorily refused to agree to or entertain such propositions, and demanded that the trial of the cause should proceed, as the said defendants had a good defense to the said action.

"That at no time during that day, or at any other time, did any of the defendants in said foreclosure suit, plaintiffs in this suit, direct or authorize the said Patterson to make any compromise, or to make or sign the stipulation hereinafter set forth, or compromise the said action by the stipulation, or by any stipulation, or otherwise; but on the contrary, refused to listen or consent to any compromise whatever, and peremptorily insisted that the trial should proceed.

"That George Pearce, Esq., an attorney of this Court, was associated as counsel with said Patterson in the defense of the said foreclosure suit, and objected to the settlement or compromise as made, and informed the said Patterson at the time that the said Preston would never consent to the settlement and compromise.

"That A. W. Thompson was attorney for the plaintiffs in the foreclosure suit, and J. McM. Shafter, Esq., was associated with the said Thompson as counsel for the plaintiffs in the said foreclosure suit.

"That late in the afternoon of that day a stipulation was made and signed by the said Patterson and the said Thompson.

"That the said stipulation was filed in this Court on the same day, and thereupon, on the same day, a decree was entered, which said stipulation and decree are set forth in full in the complaint in this action.

"That the said defendants in the said foreclosure suit, plaintiffs in this suit, or either of them, had no knowledge or information of the said stipulation before it was filed as aforesaid, nor did the said Patterson inform them, or either of them, of the said stipulation, or of its contents.

"That the attorney and counsel of the plaintiffs in the said

foreclosure suit had notice and knowledge of the facts of the want of authority on the part of Patterson, and consent on the part of the defendants in the said foreclosure suit, to make the said stipulation, or to compromise the said action, and to put the said plaintiffs in the said foreclosure suit, upon inquiry as to the want of power or authority of Patterson to make and sign such a stipulation, and the want of consent of the said Prestons thereto.

"That when the said Pearce told the said Patterson that the said defendants in the said foreclosure suit would not consent to the said stipulation, the said Patterson avowed to the said Pearce that he would assume the power, and compel them to abide by and submit to the said compromise.

"I further find that on that day, in the evening, the court convened again, and the judge called the cause, when the said Thompson stated to the court that the said cause was settled, when the said Pearce, who was then present in court, stated to the judge, in the presence and hearing of said Thompson, that the said cause was not settled, and that the said defendants in the said foreclosure suit had refused and were opposed to any compromise of the said action of foreclosure. But, notwithstanding the statement of the said Pearce, the said stipulation was thereupon filed, and decree ordered, which decree was made, signed and entered that evening."

On these facts we are called upon to decide whether the decree entered in the foreclosure suit is obligatory on the plaintiffs.

The extent to which an attorney may bind his client has been several times considered by this court, and repeatedly by other courts, both English and American. It is held by all courts, without exception, so far as I am aware, that in the absence of fraud, the acts of an attorney in the ordinary conduct of a cause will bind his client. In this State the statute provides that he may bind his client " in any of the steps of an action or proceeding by his agreement filed with the clerk or entered upon the minutes of the court, and not otherwise." But in England and in this country the ques-

tion has frequently arisen, to what extent, if at all, and under what circumstances, if any, an attorney can bind his client by a compromise of a pending action, without the express authority of the client. In England the decisions are not uniform, and the question does not appear to have been definitely settled, though it has been much discussed in several recent cases, which tend strongly to support the rule which prevails in most of the American courts, denying the authority of an attorney to compromise a pending action, merely by virtue of his retainer, and without the consent of his client. In *Swinfen* v. *Swinfen* (24 Beavan, 549), decided in 1857, Sir Samuel Romilly, Master of the Rolls, after an elaborate examination of the authorities, concurs in this view of the question. On appeal, however, the case was decided on other grounds (2 De Geix & Jones, 381). But in a subsequent action brought by the same plaintiff against the attorney, Chief Baron Pollock, in delivering the opinion of the court, held "that although counsel has complete authority over the suit, the mode of conducting it, and all that is incident to it, such as withdrawing the record, withdrawing a juror, calling no witnesses, .*   *   * and other matters which properly belong to the suit and the management and conduct of the trial, he has not, by virtue of his retainer in the suit, any power over matters which are collateral to it." (*Swinfen* v. *Lord Chelmsford,* 2 Law Times R. N. S. 406.)

In the United States, the rule, as settled by an almost uniform current of authorities, is that an attorney, by virtue merely of his retainer as such, and without express authority from his client, has not the power to bind the client by the compromise of a pending action. In *Holker* v. *Parker* (7 . Cranch, 436) the facts were, that in an action on a money demand, the attorneys for the respective parties agreed that the matters in issue might be referred by the court to referees to make a report as to the accounts between the parties. The reference having been ordered, the attorneys agreed that the referees should award $5000 to the plaintiff in full of all demands. The award was made in accordance with this agreement, and judgment on the award was en-

tered for the plaintiff. The judgment was satisfied by payment to the plaintiff's attorney; but on being informed of these facts, the plaintiff repudiated the transaction on the ground that his attorney had exceeded his authority, and commenced an action to set aside the award and judgment, and for an accounting. At the trial there was no proof of fraud or collusion on the part of the attorney; but it appeared that a much larger sum was due to the plaintiff than was awarded by the referees. The Supreme Court set aside the judgment and ordered an accounting, on the ground that the agreement between the attorneys, as to the amount to be awarded by the referees, was in effect a compromise, and not simply an award; and that the plaintiff was not bound by the compromise, and the judgment in pursuance of it, on the ground that the plaintiff's attorney had exceeded his authority. The opinion of the court was delivered by Chief Justice Marshall; and the legal proposition decided was identical with that involved here, with this exception, that in this case it appears the client protested against the compromise before it was made, and against the entry of the judgment, in the presence of the court and of the opposing counsel, while in that case it only appeared that the client was ignorant of the compromise until after the entry of the judgment, and had not assented to it. In the present case, there was not only a want of authority in the attorney to make the compromise, but an active opposition to it by the client, of which the court and the opposing counsel were advised before the entry of judgment. In *Smith's Heirs* v. *Dixon* (3 Metc. Ky. R. 438), decided in 1861, the facts were that the plaintiff employed an attorney to prosecute an action in equity for the recovery of a valuable tract of land claimed by the defendants and in their possession. While the action was pending the plaintiff's attorney entered into a compromise, whereby, in consideration of a sum of money paid by the defendants, it was agreed that a decree be entered in favor of the defendants, quieting their title as against the plaintiff, and dismissing the complaint. The decree was accordingly entered, reciting on its face that it was entered by consent. On being informed of the facts,

the plaintiff brought an action to set aside the decree, on the ground that the attorney exceeded his authority in entering into the compromise; and this view was sustained by the Court of Appeals. Peters, J., in delivering the opinion of the court, after reviewing the authorities, says: "The general question of the authority of an attorney has often been discussed in courts of justice, but it has not been held in any of them that an attorney, who is clothed with no other authority than what is incident to his retainer, can compromise and discharge his client's claim." After citing several authorities in support of the proposition, he proceeds to say: "We have been referred to no case which militates against the ruling in the foregoing cases, while many others might be cited which fully sustain them." After deciding that the decree must be set aside, he says: "A different conclusion cannot be reached (as we have seen) without infringing upon the well-settled rules of law, and sanctioning a dangerous power—too dangerous to be allowed by implication." To the same effect are *Hudson* v. *Mitchell*, 14 Serg. & R. 307; *Stackhouse* v. *O'Hara*, 14 Penn. St. 88; *Stukely* v. *Robinson*, 34 Id. 316; *Abbe* v. *Rood*, 6 McLean, 106; *Derwent* v. *Loomer*, 21 Conn. 245; *Davidson* v. *Rozler*, 23 Mo. 387; *Fitch* v. *Scott*, 3 How. Miss. R. 317; to which might be added many other cases.

It is claimed, however, that a different rule has been established in this State by the statute and by the adjudications of this Court. As I construe the statute, it is only declaratory of the common law rule, except in so far as it provides that the "agreement" by which an attorney may bind his client, in any step in the action, "shall be filed with the clerk or entered upon the minutes of the court." It was not intended to enlarge or abridge the authority of the attorney; but only to prescribe the manner of its exercise, by requiring the agreement to be filed with the clerk or entered upon the minutes. The only adjudication by this Court to which our attention has been called, having any material bearing upon the point under discussion, was in *Holmes* v. *Rogers* (13 Cal. 191). That was an action to set aside a decree entered by the consent of the plaintiff's

attorney, in pursuance of a compromise agreed upon by the attorney without the knowledge or consent of his client.

This Court upheld the decree, on the ground that in the absence of fraud or mistake, a party to an action is bound by a judgment entered by the consent of his attorney, under the circumstances stated, and particularly if the attorney be not insolvent. For the purposes of this decision it is unnecessary to review the opinion and judgment of the Court in that case. It will be time enough to do so when a similar case shall come before us. But in the present case, the facts are quite different. In that case, all that appeared was, that the attorney, without the knowledge or consent of his client, compromised the cause of action, and consented to the entry of a decree in accordance with the terms of the compromise. In this case the attorney entered into the compromise in defiance of the protest of his client; and in open court, in the presence of the adverse attorney, the client remonstrated against it as having been made without authority, and insisted that the trial should proceed. The question for decision, therefore, is, whether by virtue merely of his retainer, an attorney may compel his client to submit to a compromise against his protest made at the time, and renewed in open court, in presence of his adversary, before the entry of the judgment. No case has been produced, nor do I think one can be found, in which any court has decided that such a proceeding can be upheld either on reason or authority. Whatever presumptions the court or the adverse party might ordinarily be authorized to make, as to the authority of an attorney who proposes to compromise his client's cause of action, all such presumptions must cease, when the client, before the transaction is consummated, notifies the court and his adversary, in the most formal manner, that his attorney has acted without authority, and that he repudiates the bargain. The attorney is but the agent of the client for the management and conduct of the cause; but his retainer does not give him an unlimited power to dispose of his client's estate, by way of compromise, against which the latter protests in the presence of his adversary, before the transaction is consum-

mated.   If the mere retainer of an attorney confers upon
him so dangerous a power over the estate of his client—a
power against the exercise of which the protest of the client,
made at the time in the presence of his adversary, is wholly
unavailing—it is time that so serious a grievance should be
corrected by legislation.   It is clear, however, that the
power does not exist.

But it is suggested that the administration of justice
would be seriously embarrassed if it was incumbent on the
court, and on the adverse party at his peril, before entering
a consent decree founded on a compromise, to engage in an
inquiry whether the attorney who consented to it had the
requisite authority.   The suggestion is satisfactorily an-
swered by Sir Samuel Romilly, Master of the Rolls, in
*Swinfen* v. *Swinfen, supra.*   In that case it was strongly
pressed upon the court by the Attorney-General, that the
client would be bound by a compromise entered into by his
attorney, whether the client had consented or refused; and
that if it were otherwise, the administration of justice would
be greatly impeded.   In reply to this suggestion the Master
of the Rolls says: "But if the doctrine which the Attorney-
General expressed so strongly were to prevail, viz., that a
client would be bound, whether he had consented or re-
fused, it would be the incumbent duty of the court, in every
case, to ascertain that the facts had really been brought
before the attention and had received the consent of the
client before the order was made.   The court gives credit
to counsel, and with good justice, for it knows that they act
according to their instructions.   It gives credit to the in-
structions given by the solicitors, knowing perfectly well
that solicitors act with the most perfect *bona fides,* and
never give instructions which they do not consider they are
duly authorized to give.   Accordingly, it is for this reason
that this court never inquires whether the client has given
his consent or authorized the solicitor to give it; the court
assumes, upon the statement of counsel, that the solicitor
has so instructed him, and that the solicitor has obtained
the consent of the client to the arrangement.   If that were
not so; if the solicitor, without the authority of his client,

could give a consent, depriving a party of a certain portion of his property, how could this court act, with any confidence, without seeing that the solicitor had duly exercised his discretion in the case with regard to adults, as it does with regard to infants?

"In the case of infants the judge inquires, because he knows they cannot give their consent; but he does not do so in the case of persons who are competent to consent, because he assumes that they have been made acquainted with the facts, and that they have authorized the thing to be done. If the case were otherwise, what would be the consequence of the doctrine suggested by the Attorney-General? It would be this: That every prudent man who employed a solicitor to conduct a case for him would give this notice to the opposite side: 'You are to understand that my employment of a solicitor does not authorize him to compromise the suit without my express sanction and authority.' But after that would the compromise be good? for a great portion of the argument has gone to this extent: that the attorney has a species of authority of which the client could not deprive him, and that he would be bound by acts done under that authority, although done against his desire, and although that desire had been communicated to the other side.

"I myself have no doubt whatever, both on principle and authority, that the employment of an attorney does not entitle him to sell the subject-matter of the suit either to a stranger or to the opposing party, without an authority for that purpose; and that so far from its being productive of injurious consequences that he should not possess that authority, I think that the consequences would be to the highest degree injurious if he had it, and that it would seriously impede the administration of justice. For myself I should in that case be indisposed to allow any case of importance to be taken before me by consent, without being satisfied by evidence that the client himself had been communicated with on the subject.

"Since I have been upon the Bench, I have always assumed that the client has been communicated with, and that

what is proposed is done with his sanction and knowledge. My opinion is, that unless this were so, the functions of this court in matters of consent would be paralyzed. It would be too great an abuse of authority for an attorney to say that he has a right to dispose of the property of his client in a particular way, when if he had communicated to him all the facts the result would have been different; and yet that the other side are at liberty to say that they are entitled to insist on such an agreement, and that the party is bound by it."

Mr. Patterson having exceeded his authority in entering into the compromise, which fact was known to the adverse attorney at the time, and was brought to the attention of the court before the decree was entered, I am of opinion that the plaintiffs are not bound by it, and that it should be set aside.

Judgment reversed and cause remanded, with an order to the court below to enter a judgment vacating and setting aside the consent decree in the foreclosure suit.

Remittitur forthwith.

Mr. Chief Justice WALLACE, being disqualified, took no part in the decision.