HARRIS, ADMINISTRATOR, APPELLANT, v. ROOT ET AL., RESPONDENTS.

(No. 1,925.)

(Submitted April 27, 1903.   Decided May 11, 1903.)

*Attorneys — Contingent Fees — Contract — Abandonment—Compensation—Compromise of Litigation—Receivers—Discharge—Appeal.*

1. A contract for the professional services of an attorney in contesting a will provided that "your fee, in case the will is defeated and our clients get their shares, shall be one hundred thousand dollars," etc. Afterwards a compromise was effected—the attorney taking part therein—and the contest was dismissed. *Held,* that by the terms of the contract the attorney was only entitled to the stipulated fee in the event the will was actually defeated, and in compromising the case the contract was abandoned, and recovery by the attorney, if at all, must be on a *quantum meruit.*

2. *Obiter:* An attorney, as such, has no authority to compromise a controversy for his client,—a general retainer in a case does not imply such authority; there must be special authority delegated for that purpose ,or a ratification by the client, otherwise the compromise agreement, as well as any judgment entered in pursuance thereof, is void at the option of the client.

3.  Where a contract is for a stipulated fee contingent upon the performance of specific services by an attorney, and said services are not performed, the measure of recovery by the attorney is the value of the services actually rendered, and not the amount of the stipulated fee, notwithstanding the .rendering of the specific services was prevented by the client, or by circumstances over which he had no control.

4.  In an action to recover for professional services rendered by an attorney in contesting a will, the court, prior to the trial, appointed a receiver to receipt to the administrator of the decedent's estate for the defendants' shares therein, and to preserve them pending a termination of the action. Afterwards judgment went for defendants. *Held,* proper to discharge the receiver pending an appeal.

*Appeal from District Court, Silver Bow County; E. W. Harney, Judge.*

ACTION by John S. Harris, as administrator of the estate of Robert G. Ingersoll, deceased, against Henry A. Root and others. From a judgment for defendants, and from two certain orders made after judgment, plaintiff appeals. Affirmed.

## STATEMENT OF THE CASE.

In this action the plaintiff seeks to recover a judgment against the defendants Root and Coram for $95,000, a balance alleged to be due for legal services rendered as attorney to the said defendants by Robert G. Ingersoll, plaintiff's intestate, with interest thereon from August 24, 1897. The right of recovery is based upon the following written agreement entered into between the parties:

"Butte City, Mont., August 17, 1891.

"R. G. Ingersoll, Esq., Butte City, Montana—Sir: We agree that for your services in the contest of Maria Cummings and Henry A. Root against the probate of the alleged will of A. J. Davis, deceased, rendered and to be rendered, that your fee, in case the will is defeated and our clients get their shares, shall be one hundred (100,000) thousand dollars, and that your expenses and disbursements shall be paid in any event.

"There is to be no personal obligation against J. A. Coram in the event that the interests represented by Henry A. Root are unsuccessful, and in no event is the said J. A. Coram obligated except to pay such fee out of the funds secured from the

estate of A. J. Davis, deceased, by Maria Cummings, Lizzie S. Ladd, M. Louise Dunbar and Mrs. Ellen S. Cornue and Henry Root.

> "HENRY A. ROOT.
> "J. A. CORAM."

The claim is made that, while the services were rendered for Root and Maria Cummings, it was intended by the parties that they should also inure to the benefit of the defendants Elizabeth S. Ladd, Marie Louise Dunbar, and Ellen S. Cornue, who, in case the will should be defeated, would share in the distribution of the estate.

It appears from the allegations of the complaint that previous to the institution of the contest, and in order to provide means to prosecute the contest, the defendants Cummings, Ladd, Dunbar, and Cornue assigned to the defendants Root and Wells one-third of the interests claimed by them in the estate, in trust, to reimburse Root for the outlay necessary to procure counsel and to pay other expenses. It is further alleged that the defendant Coram acquired by assignment some interest in these shares, and also in the share of Root, the extent of which does not distinctly appear. Wells and the defendants other than those named are made parties in order that the amount received by Cummings, Ladd, Dunbar, Cornue, and Root, and the balance due them upon final distribution, may be ascertained, and the judgment recovered be declared a lien thereon in the hands of Leyson, the administrator with the will annexed, to secure the payment of the judgment. Andrew J. Davis died in 1890, and his estate has since that time been, and is now, in the course of administration by the district court of Silver Bow county. An account of the proceedings therein will be found by reference to the opinions of this court, published under the title "*In re Davis' Estate*," 27 Mont. 235, 70 Pac. 721, and 27 Mont. 490, 71 Pac. 757. The complaint herein sets them out with particularity, but they need not be repeated here. The allegations necessary to an understanding of this controversy are, in substance, the following: That the first contest of the probate

of the will was instituted by Root and Cummings in the year 1890; that these contestants were aided and assisted by their codefendants Ladd, Dunbar and Cornue; that, in order to prosecute the contest successfully, the services of Robert G. Ingersoll, an attorney at law of Dobbs Ferry, N. Y., were secured by the said Coram and Root; that the contest was tried in 1891, but without result, because the jury disagreed; that pending the trial the contract was entered into by Root and Coram, the latter becoming a party to it, because he had theretofore become entitled by assignment to certain interests in the shares of the contestants and their associates; that thereafter, on April 28, 1893, while the contest was still pending and undetermined, the contestants, with their associates, compromised the controversy with the proponent of the will by an agreement under the terms of which the contest was to be dismissed and the will admitted to probate; that the compromise was carried into effect by procuring a decree to be entered by the court in March, 1895, under the provisions of which the contest was dismissed, the will was admitted to probate, and Root, Cummings, Ladd, Dunbar, and Cornue were declared entitled to certain distributive shares in the estate; that therafter other contests were instituted by other next of kin of the deceased, which were settled by a compromise similar to that of April 28, 1893, to which all persons claiming an interest in the estate were parties, and in pursuance of which a decree was entered by the court on August 24, 1897, dismissing the contests, and finally settling and determining all controversies between the proponent and the rival claimants, and declaring the shares to which each was entitled; that the said decree became the basis of the distribution of the estate, and that the contestants Root and Cummings became thereunder entitled to greater interests than they would have received had the will been finally defeated; "that by virtue and as a result of the prosecution of said objections and contests of the validity of said writing so propounded for admission to probate as the last will and testament of said Andrew J. Davis, deceased," the said compromise contract and decree were pro-

cured, and became effectual to defeat the will, and to secure to the contestants and their associates all their rights as next of kin of A. J. Davis, deceased; that the plaintiff's intestate, by procuring the contract and decree, fully discharged his obligations under his contract, and kept and performed all the conditions thereof to be by him kept and performed; that thereby there became due and he was entitled to have paid to him the full sum of $100,000 and his expenses as stipulated therein, but that no part thereof has been paid, except the sum of $5,-000, wherefore judgment is demanded for that amount, with interest from the date of the decree.

Upon the issues made by the answers of the defendants, the cause came on for trial in the district court, sitting with a jury, on December 11, 1902. Evidence was offered by plaintiff in support of his allegations. This was objected to by the defendants Coram and Root, and the objection sustained by the court, on the ground that the complaint did not state a cause of action against them. The plaintiff having failed to amend, the jury was discharged, and judgment ordered entered for the defendants. From the judgment the plaintiff has appealed. He has also appealed from an order, made after judgment, vacating an order made prior to the trial by which a receiver was appointed to receipt to the administrator of the Davis estate for the shares of Root and his associates, and to preserve them pending a termination of this action, and also from an order subsequently made refusing to set aside the order just mentioned, and to retain the receiver pending the appeal from the judgment.

*Mr. E. N. Harwood,* and *Mr. John Lindsay,* for Appellant.

Did plaintiff's amended complaint state facts sufficient to constitute a cause of action? The determination of this question requires an interpretation of the contract in the light of the facts and circumstances surrounding the subject and purpose thereof. The facts alleged in the complaint should be liberally viewed to ascertain the intention of the parties. The court should have allowed plaintiff to prove all the facts and

circumstances surrounding and inhering in the transaction, which may properly be proved in support of the allegations of the complaint, for as so illuminated the contract is to be viewed, interpreted, and the intention of the parties ascertained and given effect. (*Heldebrand* v. *Fogle*, 20 Ohio, 147; 1 Greenleaf on Evidence, Secs. 277, 286; *Donnell* v. *Humphreys*, 1 Mont. 526; *Shreve* v. *Copper Bell Mining Co.*, 11 Mont. 324; *Truett* v. *Adams*, 66 Cal. 221; Addison on Contracts, 846; *Shore* v. *Wilson*, 9 Clark & Fin. 569; *Bareda* v. *Silsbee*, 21 How. 161; *Nash* v. *Towne*, 5 Wall. 689; Anderson's Dictionary, "Interpretation," 564; Anderson's Dictionary, "Construction," 240; *Lawrence* v. *McCalmont*, 2 How. 447; Compiled Statutes, 1887, Code Civ. Proc. Sec. 632; Century Dictionary, "Defeat;" 2 Coke upon Lit., Harg. Ed. 236, Sec. 384; Bouvier's Law Dict., "Defeasance;" Comyn's Dig., "Defeasance;" 2 Blackstone, Com. 327; *Simmons* v. *West Va. Ins. Co.*, 8 W. Va. 486; *In re Davis' Estate*, 71 Pac. 757; *Goad* v. *Hart*, 128 Cal. 197, 60 Pac. 761; *Chester* v. *Jumel et al.*, 5 N. Y. Supp. 809; *Id.*, 26 N. E. 297; *Marsh* v. *Holbrook* (N. Y. Appeals), 3 Abbt. 176; *Fairbanks* v. *Sargent*, 104 N. Y. 108, 9 N. E. 870; *Mahoney* v. *Bergin*, 41 Cal. 423; *Ballard* v. *Carr*, 48 Cal. 74; *Howard* v. *Throckmorton*, 48 Cal. 482; *Mathewson* v. *Fitch*, 22 Cal. 86; *Thurber* v. *Meves*, 119 Cal. 35; *Topeka Water Co.* v. *Root*, 42 Pac. 715; *Moyer* v. *Cantieny*, 41 Minn. 242, 42 N. W. 1060; *Kersey* v. *Garton*, 77 Mo. 645; *Alcorn* v. *Butler*, 9 Tex. 56; *Myers* v. *Crockett*, 14 Tex. 257; *Larned* v. *Dubuque*, 86 Ia. 166; *Potter* v. *Ajax Mining Co.*, 19 Utah, 421, 57 Pac. 270; *Majors* v. *Hickman*, 2 Bibb (Ky.), 217; *Mackall* v. *Willoughby*, 167 U. S. 681, 42 L. Ed. 323; *Stanton* v. *Embry*, 93 U. S. 548, 23 L. Ed. 983; *Taylor* v. *Bemis*, 110 U. S. 42, 28 L. Ed. 64; Anderson's Law Dict., "Compromise," 218; 25 Am. Repts. 546, note; *Frank* v. *Murray*, 7 Mont. 4.)

Want of mutuality is no defense where the contract has been performed by one party thereto. (*Willard* v. *Jordan*, 76 Mich. 131, 42 N. W. 1085; *Storm* v. *U. S.*, 94 U. S. 76, 24 L. Ed. 42; *Robson* v. *Miss. River Log Co.*, 61 Fed. 983 (affirmed on

appeal); *Robson* v. *Miss. River Log Co.,* 16 C. C. A. 400; *Mathewson* v. *Fitch,* 22 Cal. 86; *Jones* v. *Snow,* 64 Cal. 456; *Bloom* v. *Hazzard,* 104 Cal. 310; *Des Moines Valley R. R.* v. *Graft,* 27 Ia. 99, 1 Am. Rep. 256; *Fountaine* v. *Baxley,* 90 Ga. 416, 17 S. E. 1015; *Marie* v. *Garrison,* 83 N. Y. 14; *Lancing* v. *Wheel Co.,* 94 Mich. 272, 34 Am. St. Rep. 341; *Mackall* v. *Willoughby,* 167 U. S. 681; *Harland* v. *Territory,* 13 Pac. 457; *Ballard* v. *Carr,* 48 Cal. 74; *Howard* v. *Throckmorton,* 48 Cal. 482; *Thurber* v. *Meves,* 119 Cal. 35; *Porter* v. *Ajax Min. Co.,* 19 Utah, 421, 57 Pac. 270; *Scott* v. *Jackson,* 89 Cal. 258; *Swain* v. *Seamens,* 9 Wall. 254.)

This action is founded upon a promise in writing, which states the consideration, as fully so as an action based upon a promissory note, or letter of guaranty, given for labor, or credit, or things delivered, or to be delivered. (*Walker* v. *Brown,* 165 U. S. 654, 41 L. Ed. 865.)

Even though in the adjudication of a case founded upon a contract, after one or more trials thereof, the court in the light of all the facts and circumstances, should hold that only a *quantum meruit* should be recovered the court would not then do what was done in this case. (*Cox* v. *McLaughlin,* 76 Cal. 63; *Walsh* v. *McKeen,* 75 Cal. 521.)

*Mr. Charles R. Leonard,* and *Mr. M. S. Gunn,* for Respondents (except John H. Leyson, Administrator).

MR. CHIEF JUSTICE BRANTLY, after stating the case, delivered the opinion of the court.

1. The action of the court in sustaining the defendants' objection to the evidence presents for decision the question whether the allegations in the complaint which we have stated in substance warrant recovery by the plaintiff. The complaint declares upon the contract, and unless it appears therefrom that the plaintiff's intestate fully performed the contract on his part, or facts and circumstances are alleged justifying a failure in any particular, a recovery cannot be had. The contract is clear

and explicit in its terms, and its construction involves no difficulty. To its language alone, therefore, must we look in order to find the intention of the parties. (Civil Code, Section 2203.) Taking it by its four corners, and giving to its words their ordinary and popular sense (Civil Code, Section 2209), we find that Root and Coram undertook on their part to pay the expenses of Mr. Ingersoll in any event, provided, of course, he performed the services stipulated for. Root was to pay the full amount of $100,000, in addition to expense money, in case the will should be defeated, and he and his clients should get their shares. Coram was bound by the same undertaking, except that the amount he was to be personally liable for was in no event to exceed the amount received by his clients, including Root; that is, if they did not get anything, he was not to pay anything beyond expenses. It is therefore clear that as to him the intention was that he should not be bound except upon the happening of two contingencies, to-wit, that the will be defeated, and his clients actually get their shares. In other words, the contest was to result in success, and the funds out of which only payment could be exacted were to be secured from the estate of Andrew J. Davis. The duty to pay devolved upon him only upon the happening of these contingencies. There was included, also, the duty to devote the funds secured to that purpose. If he should not secure them, he was not compelled to pay from his own means. The obligation of Root was exactly the same, except that, if the funds secured from the estate should not be sufficient, he became personally liable for any balance. The explanation why the contract was so made is manifest. The will had been offered to probate, and a contest had been instituted by Root and Cummings which, if successful, would inure to the benefit of their associates. If it should prove a failure, they would get nothing, because, under the terms of the will, the proponent would get the whole estate, except the amount required to pay two or three small legacies. Coram was not interested in the estate. He was willing, however, to become a party to the contract, provided he could share

in the result of a successful contest, and not be held in case of failure. Mr. Ingersoll was willing to contribute to the enterprise his experience and ability, upon a contingency, provided his share was made proportionately larger; and he was willing to embody in the contract the provision that neither Root nor Coram should be liable, except upon a complete success of the enterprise through a contest, and the actual receipt by the contestants and their associates of the shares to which they would thus become entitled. A judgment sustaining the contest would not be sufficient. The shares must be received.

Counsel for the defendants contended in the court below, and contend here, that this is the only construction of which the contract is susceptible, and that as the complaint itself shows that the contestants and their associates succeeded by means of a compromise of the litigation, in negotiating which Mr. Ingersoll took part, instead of by means of a contest, which Mr. Ingersoll did not conduct to successful termination, the contract for the contingent fee was abandoned by the parties, and that a recovery against the defendants, if any may be had at all, must be upon a *quantum meruit,* for services other than those provided for by the contract. Counsel for plaintiff contends, however, that the compromise of the litigation by which the contestants obtained certain shares was *pro tanto* a defeat of the will; that under the decree the defendants have received and will receive amounts largely in excess of the sum due the estate of Mr. Ingersoll, and that in any event the procurement of a final decree settling the contest, and ascertaining the shares to which the contestants are entitled, though such decree was brought about by a compromise, was a complete discharge by Mr. Ingersoll of his obligations under the contract; and that his estate is entitled to recover on the contract.

We agree with the contention of the defendants. An attorney, as such, has no authority to compromise a controversy of his client, no matter what may be the difficulties involved, nor however advantageous the result may be to the client. A general retainer in a case does not imply such authority, and, if a

compromise of the controversy be made, it must be made under special authority delegated for that purpose. Otherwise, and in the absence of a ratification by the client, the compromise agreement, as well as any judgment entered in pursuance of it, is void, at the option of the client. (*Holker* v. *Parker,* 7 Cranch, 436, 3 L. Ed. 396; *Preston* v. *Hill,* 50 Cal. 43, 19 Am. Rep. 647; 3 Am. & Eng. Ency. of Law, 2d Ed., 358; *Jubilee Placer M'ng. Co.* v. *Hossfeld,* 20 Mont. 234, 50 Pac. 716.) Nor is this rule, which is sustained by the current of authority, changed or modified in any respect by Section 398 of the Code of Civil Procedure. (*Preston* v. *Hill, supra.*) Mr. Ingersoll could not, therefore, under the contract, assume the authority to make any compromise of the contest. His duty required him to prosecute it, and he could not be held entitled to recover under his contract, short of a successful result of the controversy, followed by actual distribution to his clients. Additional authority was therefore necessary to this end, and, when this was conferred by his clients and accepted by him, there was a mutual abandonment of the contract; for the negotiations were not included among his duties under the contract, and when the compromise was consummated the contract could not be performed. This impossibility of performance was the result of the subsequent mutual arrangement between him and his clients under and by virtue of which the compromise was made. The services stipulated for under the contract were therefore never performed, and the contingent fee to be paid for them could not be recovered. The contract was entire, and nothing short of entire performance would authorize a recovery upon it. Nor would the case have been different, had the compromise been effected without the aid or consent of Mr. Ingersoll, for, where the stipulation is for a contingent fee, no matter whether the rendering of the services is prevented by the client, or by circumstances over which he has no control, the measure of recovery by the attorney is the value of the services actually rendered, and not the amount of the stipulated fee. These views, we think, are correct upon principle, and are sustained by the weight of au-

thority. (*Tenney* v. *Berger,* 93 N. Y. 524, 45 Am. Rep. 263;
*French* v. *Cunningham,* 149 Ind. 632, 49 N. E. 797; *Western
Union Tel. Co.* v. *Semmes,* 73 Md. 9, 20 Atl. 127: *Polsley &
Son* v. *Anderson,* 7 W. Va. 202, 23 Am. Rep. 613; *Agnew* v.
*Walden,* 84 Ala. 502, 4 South. 672; *Pemberton* v. *Lockett,* 21
How. 257, 16 L. Ed. 137; 3 Am. & Eng. Ency. Law, 2d Ed.,
427, 431, and notes.) The allegations of the complaint fall
very far short of showing an entire performance of the contract.
The action of the court, therefore, was correct in sustaining
the objections to the introduction of evidence under the com-
plaint, and in directing judgment upon the plaintiff's failure
to amend.

2. The first order made after entry of judgment, though in
form an order vacating the appointment of a receiver, was
equivalent to an order discharging the receiver, and was prop-
erly made. The court had entered a final judgment. It had
lost jurisdiction of the case, "except for the purpose of enter-
taining a motion for a new trial, or such other proceedings as
might properly and lawfully be had, looking to a revision or
correction of its action, or to enforce the decree as rendered.
It had no authority, inherently or by statute, or by any rule of
this court, to retain jurisdiction for any purpose pending the
appeal." (*Finlen* v. *Heinze,* 27 Mont. 107, 69 Pac. 829.) It
was therefore the duty of the court to discharge the receiver,
who, after entry of judgment, had no other functions to per-
form. It necessarily follows that the court was also right in
refusing to set aside the order just mentioned, and to retain
the receiver pending appeal from the judgment.

The judgment and orders are affirmed.

*Affirmed.*

Motion to modify opinion denied May 18, 1903.