No. 84-531

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

---

JOHN W. WEBB,

       Plaintiff and Appellant,

  -vs-

FIRST NATIONAL BANK OF HINSDALE,

       Defendant and Respondent.

---

APPEAL FROM: District Court of the Seventeenth Judicial District,
In and for the County of Valley,
The Honorable Leonard Langen, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Morrison, Barron & Young; Robert C. Melcher, Havre,
        Montana

    For Respondent:

        Gallagher, Archambeault & Knierim; Matthew Knierim,
        Glasgow, Montana

---

Submitted on Briefs: June 14, 1985

Decided: December 24, 1985

Filed: DEC 24 1985

*Ethel M. Harrison*

Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

This is an appeal from the District Court of the Seventeenth Judicial District, Valley County. John W. Webb, appellant, filed suit against the First National Bank of Hinsdale (Bank) alleging tortious interference with a contract for the sale of his cattle. He claimed that the Bank wrongfully induced the buyer, Glasgow Livestock Sales Company, Inc. (Glasgow Livestock) to place the Bank's name on a check for the cattle as an additional payee. Appellant appeals an order granting the Bank's motion for summary judgment. We affirm the District Court's order.

From 1970 to 1977, appellant was a customer of the Bank and a good business relationship existed between them. In September 1977 the Bank refused to loan Webb additional money because of outstanding loans.

Appellant then secured financing from another lending institution, the First State Bank of Malta, and purchased 100 cows and 100 calves. He sold some of these cattle to Glasgow Livestock, in November 1978. The Bank, through its attorney, requested that Glasgow Livestock place the Bank's name on the check for the cattle as an additional payee, along with the First State Bank of Malta and another bank. The Bank claimed a right to have its name placed on the check because it claimed a security interest in appellant's cattle based on past loans made to him. He countered that the money owed was secured only by certain trucking equipment and that the Bank could not collect this indebtedness out of the proceeds of the cattle sale.

Appellant delivered the check from Glasgow Livestock to the First Bank of Malta, where it was retained until appellant paid off their loan on January 31, 1979. The check was then returned to appellant. Finally, on October 18,

2

1979, the Bank brought a collection action against appellant, Civil Action No. 15311.

Appellant responded by hiring an attorney and inquiring into the possibility of suing the Bank, claiming that it wrongfully induced Glasgow Livestock to place the Bank's name on the check as a payee. The attorney reviewed the Bank's records and concluded that such a suit would have no merit. He advised appellant to negotiate a settlement with the Bank. Subsequently, at appellant's request, the attorney began settlement negotiations with the Bank. Appellant was at all times kept apprised of the negotiations. On December 18, 1979, his attorney and the Bank's attorney stipulated that the collection action should be dismissed with prejudice. As part of this settlement, Webb endorsed the check from Glasgow Livestock over to the Bank and pursuant to the stipulation the Bank discounted its claim by the sum of $4,273.26. The collection action then was dismissed.

For nearly two years afterward there was no further communication between the parties. During that time, however, Webb hired a new attorney, and on November 6, 1981, filed the present action. He alleges that the Bank tortiously interfered with his contractual relations when it induced Glasgow Livestock to place the Bank's name on the check as a payee. The Bank moved for summary judgment under Rule 56, M.R.Civ.P., claiming that the current action was fully settled when No. 15311 was dismissed by the stipulation. Webb responded that the stipulation for dismissal of Civil Action No. 15311 was intended for the settlement of that cause only and was not intended to settle all disputes between the parties. The stipulation and order to dismiss stated that the "above entitled action [No. 15311] be dismissed with prejudice as settled in full." The

3

District Court granted the Bank's motion for summary judgment in the current action.

Appellant appeals the granting of summary judgment. We consder three issues on the appeal:

(1) Whether the negotiated compromise was a full and final settlement which included appellant's claim for tortious interference?

(2) Even if the compromise was a full and final settlement, are there genuine issues of material fact as to appellant's intent, his counsel's authority to enter the agreement and appellant's ratification of the agreement which preclude summary judgment?

(3) Does either estoppel or res judicata bar the current litigation?

> . . . Rule 56(c), Mont.R.Civ.P. permits summary judgment to issue only when there is no genuine issue of material fact, and the moving party is entitled to the judgment as a matter of law.
>
> . . .
>
> The moving party's initial burden is two-fold. First, it must show the absence of any genuine issue as to material fact. Second, that party must also show that this set of facts entitles it to the judgment as a matter of law . . .
>
> In addressing the factual test, although the court has no duty to anticipate or speculate as to material facts to the contrary, it must nonetheless draw every inference in favor of the non-moving party.
>
> If the movant has met this burden, it then shifts to the non-moving party to demonstrate a genuine issue of material fact. Mere denial or speculation will not suffice, the non-moving party must show facts sufficient to raise a genuine issue. (Citations omitted.)

Gamble Robinson Co. v. Carousel Properties (Mont. 1984), 688 P.2d 283, 286-287, 41 St.Rep. 1757, 1760-61.

In the first issue, the Bank argues the District Court properly granted summary judgment because the compromise and settlement in the first action is final and binding on the parties and bars the current action as a matter of law. Generally, a compromise agreement, when the basis for a final judgment operates "as a merger and bar of all preexisting claims and causes of action." Rodriguez v. Fireman's Fund Ins. Companies (Cal. 1983), 142 Cal.App.3d 46, 54, 190 Cal.Rptr. 705, 709. In Rodriguez, the action concluded when the plaintiff accepted defendant's settlement offer and the court entered a dismissal with prejudice. The California court equated this dismissal to a verdict and judgment on the merits barring any new actions. Rodriguez, 190 Cal.Rptr. at 710. Folsom v. Butte County Ass'n of Governments (Cal. 1982), 652 P.2d 437, characterizes a compromise agreement as "[concluding] all matters put in issue by the pleadings--that is, questions that otherwise would have been resolved at trial." Folsom, 652 P.2d at 444. In that case, the statutory rights to costs and attorney's fees were held not to be part of the agreement since they were matters incident to the judgment rather than part of the cause of action. The court also noted the surrounding facts did not show the parties intended costs and fees be included in the agreement. These cases accord with the policy that "reciprocal rights flowing from a common source [should] be determined in a single action, thus avoiding not only unnecessary vexatious litigation but also the contingency of conflicting judgments . . . " Kittle Mfg. Co. v. Davis (Cal. 1935), 47 P.2d 1089, 1094, cited in Datta v. Staab (Cal. 1959), 343 P.2d 977, 981.

Appellant's argument may be summarized as an assertion that the dismissal with prejudice only had the effect of withdrawing the Bank's claim. This would have merit if appellant had received nothing for the dismissal. However,

the amount appellant owed was substantially reduced. He benefitted from the settlement. The Bank received no benefit from agreeing to the discount and dismissal unless it served to end the litigation between the parties. The facts on which appellant relies for this cause of action all occurred prior to the time the Bank brought its collection action. The check at issue was signed and delivered to the Bank from appellant as part of the first settlement. His attorney stated, by affidavit, that "both parties wished to resolve the matter and avoid the costs of further litigation over who was a proper payee on the proceeds check . . . or the amount due the bank." He also stated that he "acted with the full knowledge and authority of [his] client, Mr. Webb, in negotiating and accepting the settlement." The appellant stated by deposition that he discussed the presence of the Bank's name on the check with his attorney and that the attorney advised him he "didn't have a lawsuit" and should settle his differences with the Bank. The affidavits of other persons involved in the negotiations reflect that the parties discussed all issues including the question of who was the proper payee on the check and that the amount appellant paid the Bank in exchange for a discount of the amount due concluded all outstanding disputes. Appellant does not contradict the evidence showing the parties discussed the current claim and included it in their negotiations. He accepted the benefit of its inclusion, a reduction of the amount due. We hold that the dismissal with prejudice in the first action concluded the pre-existing claims between the parties. The Bank therefore was entitled to a summary judgment in its favor.

Appellant argues in the second issue that he never intended his attorney to have authority to settle his tortious interference claim, and that this raises a genuine

6

issue of material fact precluding summary judgment. We agree with his contention that the compromise agreement may not be fully binding unless the attorney has the authority to enter the agreement. However, appellant's remedy is to bring an action to set aside the agreement. McGinley v. Maryland Casualty of Baltimore (1929), 85 Mont. 1, 277 P. 414. The client in McGinley knew how the settlement had been accomplished and took no action to set it aside for nearly a year.

> If defendant has ratified the acts of its attorney, it will not be heard to complain, and slight evidence of acquiescence on the client's part will be deemed a ratification of the acts of the attorney in making the compromise. (Thornton on Attorneys at Law, p. 400, sec 222.) These principles find recognition in the case of Harris v. Root, 28 Mont. 159, 72 Pac. 429, relied upon by defendant. Here the stipulation and dismissal took place in July, 1926. The defendant's answer in this case was filed in July, 1927, which shows knowledge at that time of the settlement, and, though this action was not tried until June, 1928, the record fails to show any affirmative action taken by the defendant to repudiate the settlement agreement. Such conduct on the part of the defendant is tantamount to a ratification of the settlement and dismissal of the former action.

85 Mont. at 10. When his attorney wrote him a letter advising him of the result of the negotiations, appellant accepted the offer and acknowledged the discount of the amount he owed the Bank. This shows his knowledge at the time of the settlement. Appellant acquiesced for nearly two years in the benefits of the bargain and with specific knowledge of its terms. His conduct amounts to a ratification of the settlement and dismissal under McGinley, 85 Mont. 1, and Harris, 28 Mont. 159. In addition, his attorney stated he had appellant's express authority to "negotiate a settlement of the outstanding differences" between appellant and the Bank. Appellant's claim that the

7

attorney lacked authority, absent any action to set aside the agreement, does not raise a factual question material to the current action of tortious interference against the Bank. The District Court correctly found that his contentions at this late date were not material and would not preclude summary judgment.

The Bank argues that estoppel and res judicata also bar appellant's current action against it. The District Court mentioned both doctrines as possible bases for summary judgment. Our holdings on the first two issues dispose of this appeal. We therefore do not address this issue.

The order of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

8

Mr. Justice Frank B. Morrison, Jr. dissents as follows:

I dissent.

The appellant, John W. Webb, had, in the past, obtained financing from the defendant, First National Bank of Hinsdale, for the purpose of buying cattle. Eventually Webb changed banks and began financing his cattle buying operation through the First State Bank of Malta. At the time he changed banks he owed the Hinsdale Bank $29,000 with interest from January 25, 1978. This note was secured by four semitrailers. On November 7, 1978, Webb sold cattle to the Glasgow Livestock Sales Company and received a check for those cattle in the amount of $30,389.00. The check was made payable to Webb, the First State Bank of Hinsdale and to the First State Bank of Malta. The First State Bank of Hinsdale had its name put on the check without Webb's consent apparently to secure the $29,000 debt owing from Webb to the Hinsdale Bank.

On January 25, 1978, the First National Bank of Hinsdale had instituted proceedings to collect on the $29,000 note due from Webb to the Hinsdale Bank. In order to free up the money received from the cattle sales Webb agreed to pass a substantial portion of the cattle sale proceeds over to the Hinsdale Bank in return for a dismissal of that action. In order to obtain the cash settlement the Hinsdale Bank discounted its claim to the sum of $4,273.26. The action instituted by the Hinsdale Bank was dismissed with prejudice. That action contained no issues other than the collection proceedings instituted by the Bank. Webb did not file an answer and did not allege any claims against the Bank by way of offset or counterclaim.

The majority opinion holds that dismissal of the collection suit instituted by the Bank settled the tortious

9

interference claim that Webb had which was premised upon the fact that the Hinsdale Bank improperly asked that its name be put on the check he was to receive for the sale of his cattle. Webb contended that the cattle did not secure his loan with the Hinsdale Bank and that the Bank was not entitled to any of those proceeds as a matter of lien. In this case Webb contends that the Bank tortiously interfered with his contractual relationships with the Glasgow Livestock Company by improperly claiming an interest in his cattle sales. This claim formed no part of the collection suit instituted by the Hinsdale Bank against Webb and therefore the dismissal with prejudice of the Bank's claim in that case, settled nothing with respect to Webb's tortious interference claim.

The defendant Bank seeks to shore up its argument by contending that the affidavit of Webb's attorney shows that Webb and the Bank intended to settle all claims including the tortious interference claim that Webb had against the Bank. This argument should fail for the following reasons:

1. The record in the collection case is clear and needs no explanation. The dismissal with prejudice could do no more than settle the claims pending in that action. Since a counterclaim for tortious interference would not be a compulsory counterclaim the issue involved in this case could have in no way been a part of that first litigation instituted by the Hinsdale Bank.

2. Any communications between Webb and his attorney with respect to what was involved in the dismissal with prejudice, are privileged and cannot be used against Webb. I am at a loss to understand how Webb's attorney reconciles his affidavit with the canons of ethics.

3. Even if the attorney's affidavit could be considered, the facts stated therein are disputed by Webb so that a summary judgment would not be proper.

In summary, dismissal with prejudice of the collection suit did not settle Webb's separate claim for tortious interference with contract rights. It could not; it did not. Summary judgment should be reversed and the matter remanded for trial.

_____
Justice

I concur in the foregoing dissent of Justice Morrison.

_____
Justice

11