SUTTON, Respondent, *v.* LOWRY, Executor, et al., Appellants.

(No. 2,665.)

(Submitted October 6, 1909. Decided October 23, 1909.)

[104 Pac. 545.]

*Oral Contract—Breach—Complaint—Evidence—Insufficiency— New Trial—Abuse of Discretion—Misconduct of Jurors— Affidavits—Inadmissibility—Appeal—Record.*

Appeal—New Trial—Record—Sufficiency.
    1. Where the record on appeal from a new trial order, made upon the minutes of the court, contains all the papers enumerated in sections 6799 and 7114, Revised Codes, and the certificate of the trial judge recites that the statement of the case is true and correct, it will be *held* to contain all the minutes.

Same—Finding Favorable to Appellant—Right to Complain.

2. A finding in favor of defendant on his counterclaim "and against the plaintiff, for the sum of no dollars," was in the latter's favor, of which he will not be heard to complain.

New Trial—Misconduct of Jurors—Affidavits—Information and Belief—Hearsay.

3. Affidavits based upon matters of hearsay or upon information and belief are incompetent to show misconduct of jurors.

Same—Affidavits—Insufficiency.

4. Affidavits reciting that a juror had certain amounts of money immediately after the trial of a cause, a retrial of which was sought on the ground of misconduct of jurors, were insufficient, where affiants disclaimed any knowledge of the source from which such money was received.

Same—Affidavits—Immateriality.

5. A record of a contempt proceeding against a juror relating to matters which occurred subsequent to, and were not in any manner connected with, the cause of which a new trial was asked because of misconduct of such juror, was immaterial, and therefore properly excluded.

Same—Impeaching Verdict—Affidavits of Jurors—Inadmissibility.

6. The provision of section 6794, subdivision 2, Revised Codes, that the affidavits of jurors may be used to impeach a verdict only when it was reached by resort to chance, is exclusive; hence, an affidavit of a juror, relating to a conversation had with another juror touching the latter's misconduct, was incompetent, as was also that of one, not a juror, as to the contents of an affidavit of the offending juror, for the same and the additional reason that it was hearsay.

Same—Incompetency of Juror—Time to Object.

7. Plaintiff's affidavit in support of a motion for a new trial alleged that one of the jurors sitting in the cause had pursued his vocation as pumpman in a mine every night during the trial, and was therefore not able to give to it that full and deliberate consideration which a litigant is entitled to from a juror. The affidavit did not set forth that neither plaintiff nor his counsel knew of this during the progress of the trial. *Held,* that in the absence of such an averment the affidavit was unavailing, since a party cannot speculate upon the chances of a verdict by refraining from objecting to the incompetency of a juror, known of during the trial, and then, upon an unfavorable outcome, urge the objection on motion for a new trial.

New Trial—Insufficiency of Evidence—Conclusiveness of Verdict.

8. The question of the credibility of witnesses is primarily addressed to the jury, and their verdict, in an action at law, sought to be set aside on the ground that the evidence was insufficient to justify it, should only be set aside for the most cogent reasons.

Contracts—Breach—Contingencies—Complaint.

9. Where plaintiff's right to recover, in an action for the breach of a contract, is contingent upon the happening of a future event, he must allege in his complaint that the contingency has arisen and that he has fully performed on his part.

Same— Breach — Contingencies — Full Performance — Complaint — Insufficiency.

10. Plaintiff brought suit to recover on an oral contract, under the alleged terms of which he was to take charge of the defense in an

action against defendants to recover damages for wrongfully extracting ores from a mining claim adjoining their own, he, in the event of the successful termination of the litigation, to be recompensed by a lease on defendant's mine and in various other ways. The complaint alleged that such litigation was still undetermined, but that he had been prevented from fully performing on his part by the action of defendants in selling their mine and parting with possession thereof. *Held*, that the sale of their property by defendants did not *ipso facto* terminate the litigation, and that, nothing appearing in the complaint that it would not be continued or that plaintiff was released from performing on his part, the pleading did not state a cause of action on the contract.

Same—Insufficiency of Evidence—New Trial—Abuse of Discretion.
11.   Where a review of the evidence in an action for the breach of an oral contract disclosed that the verdict of the jury in favor of defendants was the only one which could justly have been reached, the trial court abused its discretion in granting a new trial on the ground that the evidence was insufficient to justify the finding.

Appeal from District Court, Silver Bow County; Jeremiah J. Lynch, Judge.

ACTION by Wakeman Sutton against T. M. Lowry, executor of Silas F. King and others. Judgment for defendants; and from an order granting a new trial, they appeal. Reversed.

There was a brief by *Mr. Lewis P. Forestell,* and *Mr. James E. Murray,* in behalf of Appellants, and oral argument by both.

The order of the court granting a new trial was arbitrary and not based upon sound discretion. In view of the plain admissions and contradictions of plaintiff, and the absolute preponderance of the testimony in favor of defendants, there was a manifest abuse of discretion in granting a new trial, and the order should therefore be reversed. (*Braithwaite* v. *Aiken,* 2 N. D. 57, 49 N. W. 419; *Clifford* v. *Denver S. P. & R. R. Co.,* 12 Colo. 125, 20 Pac. 335; *Rowe* v. *Matthews,* 18 Fed. 132; *Cotter* v. *Butte & Ruby Valley Smelting Co.,* 31 Mont. 129, 77 Pac. 509; *Orr* v. *Haskell,* 2 Mont. 225; *Sovereign Camp, Woodmen of the World* v. *Thiebaud,* 65 Kan. 332, 69 Pac. 349.)

The contract alleged in plaintiff's complaint is a contract which, by its terms, cannot be performed within one year, and is therefore within the statute of frauds. (Rev. Codes, sec. 5017.) The lease was not to take effect until the termination

of the litigation, which had just been commenced at the time the alleged contract was made. It is clear that such a contract could not, by its terms, be performed within one year from the making thereof. (*White* v. *Levy,* 93 Ala. 484, 9 South. 164; *Wickson* v. *Monarch etc. Co.,* 128 Cal. 156, 79 Am. St. Rep. 36, 60 Pac. 764, 49 L. R. A. 141; *Warner* v. *Hale,* 65 Ill. 395; *Brownell* v. *Welsh,* 91 Ill. 523; *Greenwood* v. *Strother,* 91 Ky. 482, 16 S. W. 138; *White* v. *Holland,* 17 Or. 3, 3 Pac. 573; *Jellett* v. *Rhode,* 43 Minn. 166, 45 N. W. 13; *Wolf* v. *Dozer,* 22 Kan. 436; *Hand* v. *Osgood,* 107 Mich. 55, 61 Am. St. Rep. 312, 64 N. W. 867, 30 L. R. A. 379; Jones on Landlord and Tenant, sec. 152.)

The contract alleged is based upon a conditional liability, and the rule is well established that where the condition of an agreement is dependent upon a certain contingency, unless it is alleged and proved that the contingency has arisen, no liability attaches in behalf of the party promising performance conditionally. (*Harris* v. *Root,* 28 Mont. 159, 72 Pac. 429.) The sale of the mine did not render impossible the performance of plaintiff's alleged contract. (*Krebs Hop Co.* v. *Livesley* (Or.), 92 Pac. 1084.) The right of action did not pass with the sale. (*Evans* v. *Railway Co.,* 90 Ala. 54, 7 South. 758; *Mayor of Huntville* v. *Ewing,* 116 Ala. 576, 22 South. 984.)

Affidavits of jurors are incompetent to impeach their verdict. Such affidavits may be received in support of a verdict but not to attack it unless it is arrived at by determination of chance. (*Fitzgerald* v. *Clark,* 17 Mont. 100, 52 Am. St. Rep. 665, 42 Pac. 273, 30 L. R. A. 803; *Gordon* v. *Trevarthan,* 13 Mont. 387, 40 Am. St. Rep. 452, 34 Pac. 185; *Griffiths* v. *Montadon,* 4 Idaho, 377, 39 Pac. 549; *State* v. *Rigley,* 7 Idaho, 292, 62 Pac. 679; *Saltzman* v. *Sunset Tel. & Tel. Co.,* 125 Cal. 501, 58 Pac. 169.) The affidavit of Sutton amounts to nothing, as it is not made positively, but simply states his belief, and for that reason is incompetent and should be disregarded and stricken. (12 Ency. of Pl. & Pr. 1259.) Averments on information and belief are insufficient to show misconduct. (*Bon-*

*ardo* v. *People,* 182 Ill. 411, 55 N. E. 519; *Hutchins* v. *State,* 151 Ind. 667, 52 N. E. 403; *State* v. *Stubblefield,* 157 Mo. 360, 58 S. W. 337; *Texas Farm etc. Co.* v. *Story* (Tex. Civ. App.), 43 S. W. 933; *Pleasants* v. *Heard,* 15 Ark. 403; *Youle* v. *Brown,* 49 Ill. App. 102; *Toliver* v. *Moody,* 39 Ind. 148; *Shinn* v. *Tucker,* 37 Ark. 580; *Phillips* v. *Town of Scales Mound,* 195 Ill. 353, 63 N. E. 180; *Gay* v. *Torrance,* 145 Cal. 144, 78 Pac. 543.)

*Messrs. McBride & McBride* filed a brief on behalf of Respondent, and *Mr. Robert T. McBride* argued the cause orally.

The district court having granted to the plaintiff a new trial, the ruling will not be disturbed by the appellate court in the absence of a satisfactory showing of an abuse of discretion on the part of the lower court. (*Mullen* v. *City of Butte,* 37 Mont. 183, 95 Pac. 597; *Stevens* v. *Elliott,* 36 Mont. 92, 92 Pac. 45; *White* v. *Barling,* 36 Mont. 413, 93 Pac. 348; *Walsh* v. *Conrad,* 35 Mont. 68, 88 Pac. 655; *Fournier* v. *Coudert,* 34 Mont. 484, 87 Pac. 455; *Case* v. *Kremer,* 34 Mont. 142, 85 Pac. 878; *Vogt* v. *Baldwin,* 20 Mont. 322, 51 Pac. 157; *Murray* v. *Heinze,* 17 Mont. 359, 42 Pac. 1057, 43 Pac. 714; *Haggin* v. *Saile,* 14 Mont. 79, 35 Pac. 514; *Bowen* v. *Webb,* 37 Mont. 479, 97 Pac. 839.) ·

The affidavits submitted going to show the bad character and unfitness of the juror Doney to sit or act as a juror should have been considered by the trial court. A corrupt attempt to influence a verdict of a jury or decision of a court is always a ground for a new trial, without reference to the merits of the case, and whether successful or not. The law is so sensitive upon this subject that affidavits, not explained away, casting suspicion of such misconduct on the prevailing party, will avoid the judgment. (*Scott* v. *Tubbs,* 43 Colo. 221, 95 Pac. 540, 19 L. R. A., n. s., 733; Thompson on Trials, sec. 2560; *Huston* v. *Vail,* 51 Ind. 299, cited with approval in *Finlen* v. *Heinze,* 28 Mont. 576, 73 Pac. 123.) "The rule is applied with almost equal stringency whether such attempts proceed from the pre-

vailing party himself, from his friends, or from officious third persons.'' (Thompson on Trials, sec. 2560, cited with approval in *Finlen* v. *Heinze*, above.) Misconduct or irregularity on the part of the jury are questions of fact to be determined by the trial court, and its determination thereon is final and not subject to revision on appeal. (*Hull* v. *Minneapolis St. Ry. Co.*, 64 Minn. 402, 67 N. W. 218; *Gordon* v. *Trevarthan*, 13 Mont. 387, 40 Am. St. Rep. 452, 34 Pac. 185.) It is an established and salutary rule of law that the least intermeddling with jurors is sufficient cause for setting aside a verdict. Too much care and precaution cannot be used in preserving the purity of jury trials. (*Austin* v. *Langlois*, 81 Vt. 223, 69 Atl. 741; see, also, *Merritt* v. *Bunting*, 107 Va. 174, 57 S. E. 569.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This is an action to recover damages for the breach of a contract. In 1899 this plaintiff and J. A. Talbot had a lease upon the Silver King quartz lode mining claim, situated in Silver Bow county, and owned by the defendants Murray, King, and Daly. During the term of such lease J. H. Maloney and others, the owners of the Plymouth claim, which adjoins the Silver King claim, brought an action against Sutton, Talbot, Murray, King and Daly to restrain them from removing the minerals from certain veins claimed to belong to the Plymouth property, and to recover damages for ores already removed from the disputed territory. The complaint in this action, after setting forth these facts at greater length, then alleges that upon the commencement of the Plymouth-Silver King litigation, Murray, King, and Daly employed the plaintiff, Sutton, to prepare the defense in said action, by doing such development work as might be necessary, and by procuring witnesses to testify to the facts shown by such development work, and generally to take charge of the defense in said action and the preparation of that case, and any other cases which might arise in connection with the same subject matter, for Murray, King and Daly,

and that in consideration of his doing so, Murray, King, and Daly agreed that in the event of their success in the Plymouth-Silver King litigation, they would recompense Sutton by (1) repaying him whatever money he necessarily expended; (2) paying him well for his time; and (3) giving him a new lease upon the Silver King property upon the same terms as those contained in the lease to Sutton and Talbot, such lease to be given "as soon as the said litigation was ended." The complaint further alleges that between August 1, 1897, and July 1, 1906, plaintiff, in pursuance of such contract, expended the sum of $10,250, and that his time, expended pursuant to said agreement, was worth $35,000, and that no part of either of these sums had been paid to him. It is further alleged that the Plymouth-Silver King litigation is still pending; that prior to the commencement of this present action Murray, King, and Daly sold the Silver King property and parted with possession of it, and by such acts have made it impossible for them to carry out that part of the agreement to give to this plaintiff the lease mentioned above. It is then alleged: "(13) That a lease on the said ground for the period of one year, upon the terms which the said defendants agreed to give the same, would be of the reasonable value of $50,000." The prayer is for judgment for $95,250 and costs.

The answers consisted of general denials and other matters by way of defense. The defendant King set forth certain counterclaims for money loaned by him to plaintiff, and all but one of these counterclaims, so far as they relate to money loaned, are admitted in the reply. Upon the trial the jury returned the following verdict: "We, the jury in the above-entitled cause, find our verdict herein in favor of the defendants and against the plaintiff, upon the cause of action set forth in plaintiff's complaint; and we further find in favor of Silas F. King, upon the counterclaim set forth in his separate answer, and against the said plaintiff, for the sum of no dollars." Upon this verdict a judgment was rendered and entered in favor of defendants Murray, King, and Daly for their costs. The plaintiff

made a motion for a new trial, and in his notice of intentions specified most of the statutory grounds, and gave notice that he would ask for a new trial upon the minutes of the court and affidavits thereafter to be presented. The plaintiff presented affidavits in support of his contention that he had been prevented from having a fair trial by reason of the misconduct of certain jurors; but, upon objection by defendants, these affidavits were disregarded. The court, however, in a general order granted plaintiff's motion for a new trial, and from that order the defendants have appealed. Some time after the trial of the cause the defendant King died, and Lowry, his administrator, was substituted in his stead.

At the outset we are met with a question of practice urged by respondent as follows: "The motion for a new trial was made upon the minutes of the court. The record does not contain the minutes of the court, nor does it contain anything which purports to be a complete record, including the minutes of the court, and the appeal for that reason should be dismissed"—and *Sanden* v. *Northern Pacific Ry. Co., ante,* p. 209, 102 Pac. 145, is cited in support of this contention. In the *Sanden Case* the motion for new trial was made upon the minutes of the court and a bill of exceptions. In the record on appeal the minutes of the court were not presented, and we therefore held that, in the absence of such minutes, we could not say that the order granting the new trial was not properly made. But the same condition does not prevail in this present appeal. This record contains the judgment-roll, a statement of the case, and copies of the affidavits used, of the notice of intention to move for a new trial, plaintiff's bill of exceptions, the order appealed from, and the notice of appeal. Sections 6799 and 7114, Revised Codes, provide that upon an appeal from an order granting a new trial, wherein the motion is made upon the minutes of the court, the record on appeal shall consist of the papers just enumerated above, as contained in this record. The trial court, in settling this statement of the case, certifies that it is true and correct; and since the only office of a state-

ment of the case is the bringing before this court the minutes of the trial court, it follows that a true and correct statement contains all the minutes.

It is also suggested by respondent that the verdict is inconsistent with the admitted facts, and this is true. The pleadings admit an indebtedness on the part of plaintiff to defendant King, and yet the verdict does not find in King's favor for any amount. But this is not a matter of which respondent Sutton can complain. If the finding of the jury that King is not entitled to recover on his counterclaims amounts to anything, it is a finding in Sutton's favor, of which he cannot complain, and which he could not urge in the trial court in support of his motion for a new trial.

It was also urged by respondent that the trial court ought to have considered the affidavits presented in support of his motion for new trial, and ought to have granted a new trial upon the ground of misconduct of the jury, or, speaking more accurately, misconduct of jurors Doney and Ronning. The affidavit of plaintiff, Sutton, sets forth only matters of hearsay or matters on information and belief, and was incompetent for the purpose offered. (*People* v. *Findley,* 132 Cal. 301, 64 Pac. 472; *Gay* v. *Torrance,* 145 Cal. 144, 78 Pac. 540.)

The affidavits of Fred Henderson and Dr. Witherspoon recite the fact that the juror Doney had certain amounts of money immediately succeeding the trial of this case, but each affiant disclaims any knowledge of the source from which such money was received. The record of certain contempt proceedings against Juror Doney was wholly immaterial. It relates to a matter which happened subsequent to, and not in any manner connected with, the trial of this case.

One of the affidavits presented is by Henry Olsen, a juror who sat in the trial of this case. It relates to a conversation had with the juror Doney, and tends to show misconduct on the part of Doney in deciding this case. Our Code provides, in subdivision 2 of section 6794, that the affidavits of jurors may be used to impeach a verdict when the verdict was reached by

resort to chance. This is the only instance wherein it is permitted to impeach a verdict by the affidavit of a juror; and it is quite uniformly held that such a statutory provision is exclusive. In *State* v. *Beesskove,* 34 Mont. 41, 85 Pac. 376, this court announced the general rule as follows: "While there is some contrariety in the decisions of courts upon the question whether jurors should be heard to impeach their own verdict, we think reason and great weight of authority condemn the practice which permits it. (See 29 Am. & Eng. Ency. of Law, 1008, 1009, with notes.) In any event, it should not be tolerated further than the statute permits. (Pen. Code 1895, sec. 2192.) This section provides for the one exception, namely, cases where the verdict has been decided by lot, or by any means other than a fair expression on the part of all the jurors. In such case the impeaching affidavit may be made by members of the jury. (Code Civ. Proc. 1895, sec. 1171.) This express exception, under the rule *'Expressio unius est exclusio alterius,'* it would seem excludes all other exceptions. Early in the history of the state the supreme court of California declared it to be the rule, founded on necessary policy, that such affidavits cannot be admitted to impeach a verdict. (*People* v. *Baker,* 1 Cal. 404.) This rule was adhered to until 1862, when the legislature provided for the single exception of the case where the verdict was found by a resort to chance. With this modification the rule now prevails. (*People* v. *Azoff,* 105 Cal. 632, 39 Pac. 59; *People* v. *Soap,* 127 Cal. 408, 59 Pac. 771.) The sections of our statute cited were adopted from that state; and, since the interpretations given to them embodies the better rule, we approve and adopt it. Beyond this the court ought not to receive such evidence for the obvious reason that, after the verdict has been rendered, members of the jury would be subject to all sorts of influences intended to induce them to repent of their decision and lend their aid in having it revoked. They might even be tampered with and corrupted, so that the integrity of the verdict must rest, not upon the integrity and honesty of the jury during their deliberations, but upon their sus-

ceptibility to such influences after their duties have been faithfully performed under their oaths.'' (See, also, *Gordon* v. *Trevarthan*, 13 Mont. 387, 40 Am. St. Rep. 452, 34 Pac. 185; *People* v. *Findley*, above.) For the same reason the affidavits of C. Q. Bates were properly disregarded. If juror Doney's affidavit of his misconduct was incompetent,—as it would have been under the rule announced above,—for the stronger reason would the affidavit of another as to the contents of Doney's affidavit or statement be incompetent; for, in addition to the ground announced, it would be open to the objection that it is hearsay.

The affidavit of the plaintiff also alleges that one of the jurors, Charles Ronning, who sat in the trial of this case, and who, upon the jury being polled, announced that he concurred in the verdict returned, was a pumpman employed in one of the mines in Butte; that the juror continued his work at the mine every night during the progress of the trial of this case, and by reason of this fact was ''not in a position or condition to give to the trial of the case the full and deliberate consideration to which a litigant is entitled from a juryman.'' But the affidavit does not anywhere state when plaintiff or his attorneys first became aware of this irregularity or misconduct of the juryman, if his conduct may be given either designation. If, as a matter of fact, the plaintiff or his attorneys knew of the conduct of this juryman during the progress of the trial, plaintiff cannot now complain, for a litigant may not, with such knowledge, proceed with the trial under the hope or expectation that the offending juryman may be favorable to his cause, and then complain if he is not. A party is not permitted to thus speculate upon the chances of a verdict. In 1 Spelling on New Trial and Appellate Procedure, section 149, the rule is thus announced: ''The general rule, often stated, that a remedy for any act or episode endangering the fairness of a trial must be sought and applied at the earliest practical moment by the party complaining, or having a right to complain, is applicable to all kinds and grades of misconduct of the jury.

Stated more specifically, the rule is that, though the jurors during the progress of the trial are guilty of such misconduct as would have required the court, on motion, to admonish them, or otherwise apply a remedy to remove the effect, or if no such remedy be adequate, to discharge them, yet if he, with knowledge, fail to make any objection or call the court's attention to the alleged misconduct, and allows the trial to proceed to a verdict, he cannot subsequently take advantage of such misconduct on motion for a new trial.'' And the authorities supporting the text are collected at great length. In the absence of a showing that the plaintiff and his attorneys did not know of such conduct on the part of juror Ronning during the progress of the trial, the affidavit is unavailing for the purpose of showing misconduct or irregularity on the part of the juror.

For the reasons stated, the trial court properly disregarded these affidavits on the hearing of the motion for new trial.

We are not able to discover any other possible ground of the motion upon which the court could have granted a new trial, except insufficiency of the evidence to justify the verdict. The burden of proof was upon the plaintiff, and the verdict returned was in favor of the defendants. The entire controversy hung upon a solution of the question, Was the contract upon which plaintiff relies ever in fact made? The verdict answered this inquiry in the negative. The plaintiff claims that he made the agreement with Murray, and that King was aware of and acquiesced in it. Murray and King each testified positively that such a contract was not made or acquiesced in by him, and numerous facts and circumstances introduced seem strongly to support their contention. The jury believed their testimony, and the question of their credibility was addressed primarily to the jury. So long as the jury is a part of our judicial system, the verdict in an action at law ought not to be set aside, except for the most cogent reasons; otherwise the constitutional guaranty of a right to trial by jury becomes a mere idle phrase—high-sounding, but without any potency whatever.

But aside from the question whether the evidence offered by
the defendants was of itself sufficient to sustain the verdict
in their favor, we are confronted with the inquiry, Does this
record disclose an abuse of discretion on the part of the trial
court in granting a new trial? And this must be resolved by
reference to the entire record and proceedings before us. Ac-
cording to the allegations of the complaint, the termination of
the Plymouth-Silver King litigation, successful to Murray, King,
and Daly, was a condition precedent to the plaintiff's right to
recover at all, and the rule of pleading is that where plaintiff's
right of recovery is contingent upon the happening of a future
event, he must allege that the contingency has arisen. (*Harris*
v. *Root*, 28 Mont. 159, 72 Pac. 429.) The complaint does not
allege that the Plymouth-Silver King litigation has terminated
but, on the contrary, alleges that such litigation is still in court,
undetermined at the time this action was commenced. It is
also a general rule that plaintiff in such case must allege full
performance on his part. This he does not do; but he seeks
to avoid this by alleging facts intended to excuse his failure to
fully perform. He sets forth that the defendants sold the
Silver King property and delivered possession to the purchaser,
"and that by the acts of defendants and otherwise plaintiff has
been prevented from making a complete performance of the
portion of said contract to be by him performed." Since there
are not any other acts mentioned, the word "acts" above must
refer to the sale and delivery of possession, and the words "and
otherwise" do not appear to refer to anything in particular.
So this pleading must be construed as alleging that plaintiff
was prevented from fully performing his part of the contract
by reason of the sale of the Silver King property and delivery
of possession thereof to the purchaser, but this allegation is
not sufficient. The sale of the property and the delivery of
possession did not, as a matter of law, terminate the Plymouth-
Silver King litigation. Neither would those facts, standing
alone, relieve the plaintiff from his obligation under the con-
tract. Murray, King, and Daly could not avoid their liability

for ores already wrongfully extracted from the Plymouth
ground, if any had been wrongfully extracted, by the mere sale
of this property, and putting their purchaser in possession.
(*Krebs Hop Co.* v. *Livesley,* 51 Or. 527, 92 Pac. 1084.) And there
is not anything in the complaint to indicate that the Plymouth-
Silver King litigation would not be continued, or that the sale
of the Silver King property would in any wise diminish the
efforts required on the part of Sutton under the contract, or
interfere in any manner with his performing the acts required
of him by the contract to be performed. It is not necessary to
consider what, if any, right Sutton might have in an action
upon a *quantum meruit.* This is not such an action. In this
instance he relies upon the contract, as indeed he had to do in
order to state any cause of action for the failure of defendants
to give him a lease.

Our conclusion is that the complaint does not state a cause of
action *on the contract* for money expended, or for the value of
plaintiff's time.

A consideration of the remaining question, relating to the
defendants' failure to give the lease, discloses the weakness of
plaintiff's entire case upon the evidence. The plaintiff alone
testifies to the fact that a contract was made by the defendants
and himself, relative to his employment to take charge of the
defense in the Plymouth-Silver King litigation and the facts and
circumstances surrounding the making of it. While he is very
positive that a contract was made, his testimony as to the terms
and conditions of the agreement is so vague and indefinite, and,
when his cross-examination is considered with his testimony
given on direct examination, there appear so many contradic-
tions or irreconcilable statements, that we are of the opinion
that a verdict in his favor, based upon his entire testimony,
would have to be set aside for insufficiency of the evidence to
support it. The verdict returned seems to us to be the only
one which could have been reached upon the evidence in the
case, eliminating the question of King's right to recover on his
counterclaims; and, this being so, the court abused its discretion

in granting a new trial, and the order is reversed. (*Ormund* v. *Granite Mt. Min. Co.,* 11 Mont. 303, 28 Pac. 289.)

Reversed.

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.

