20

FIRST NATIONAL BANK OF WHITE SULPHUR SPRINGS, a Banking Corporation, J. W. HORNE, JAMES JAY HORNE and WALTER RAY HORNE, Plaintiffs and Respondents, v. SAM STOYANOFF, Defendant and Appellant.

No. 9888.
Submitted January 15, 1960. Decided March 7, 1960.
349 Pac. (2d) 1016.

George Niewoehner, White Sulphur Springs, Loble and Picotte and Patrick F. Hooks, Helena, for appellant. Patrick F. Hooks argued for appellant.

Ralph J. Anderson and Stanley P. Sorenson, Helena, for respondents.

Ralph J. Anderson argued orally for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment in favor of the plaintiff, First National Bank, in the amount of $8,500.44, after a motion for a new trial had been denied. The action was brought in equity by plaintiffs and respondents, the First National Bank of White Sulphur Springs and J. W. Horne, James J. Horne, and Water Ray Horne, demanding an accounting by the defendant and appellant, Sam Stoyanoff.

The plaintiff, J. W. Horne, is the father of the other plaintiffs, James and Walter Horne. Hereafter they shall be referred to collectively as simply the Hornes. Stoyanoff, the defendant and appellant here, will be referred to as defendant. The plaintiff First National Bank will be referred to as the Bank.

Defendant was the owner of a sheep ranch in Meagher County and on November 15, 1952, he entered into a one-year lease and management agreement with the Hornes, whereby the defendant leased to the Hornes his sheep ranch, certain designated farm machinery and turned over to the Hornes the care and custody of 2,460 sheep. The Hornes entered into possession of the ranch and the parties evidently operated satisfactorily under this agreement during the farm year of 1953 as no controversy arose during this period.

On October 12, 1953, the parties entered into another agreement, with certain modifications, renewing the prior agreement for another year until November 15, 1954. Under the renewed agreement, the Hornes continued in possession of the premises and custody of the personal property. They covenanted and agreed to care for the sheep, put up the hay crop, plant certain grain crops and generally to care for the defendant's ranch and personal property in a careful manner according to sound ranching practices. In return, the Hornes were to receive one-half of the gross revenue from the sale of the lamb crop and the wool, defendant having the right of sale. To provide the Hornes with operating expense monies, the defendant agreed to advance the sum of $150 per month; reimbursement to be made to the defendant for these advancements from the first monies received from the sale of the wool and lamb crop. The agreement expressly provided that the Hornes could not assign any interest in the agreement or sublet the premises, and the Hornes were required to care for the property, both real and personal, for the full term up to and including the 15th day of November 1954, before they would be entitled to their share of the gross revenue from the lambs and the wool. Additionally, the Hornes were obligated to perform certain specific tasks such as the building of one and three-quarter miles of fence on the premises, provide the defendant with forty sacks of potatoes at the termination of the agreement, and to leave upon the premises at the termination date an amount of baled hay

equal in amount to that turned over to the Hornes on November 15, 1952.

The Hornes continued in possession of the premises during the winter of 1953-1954, and in March of 1954 the defendant, with the consent of the Hornes, contracted the lambs for fall delivery. During the 1954 season the defendant advanced to the Hornes the total sum of $7,385.51. It is undisputed that the defendant sold the 1954 wool crop and the 1954 lamb crop, receiving gross amount of $34,783.62. No full accounting was had between the parties.

Early in 1954, the Hornes borrowed from the Bank, the other plaintiff, certain amounts of money, amounting to $4,500. In return, the Bank after viewing the aforementioned management contract between the Hornes and the defendant Stoyanoff took promissory notes from the Hornes in the usual form; and the Hornes purported to execute a chattel mortgage to the bank as security for the note and further advances. The chattel mortgage purported to cover an undivided one-half interest in and to 1,900 mixed lambs located on the defendant's ranch. Subsequently after the termination of the agreement, and after a failure to arrive at an accounting between the parties, the Bank took from the Hornes an assignment to all their right and interest under the contract with defendant. This suit followed, the parties thereto being as above stated.

During the period of 1954, certain disagreements arose between the parties to the ranching contract. The disagreements culminated in the Hornes leaving the ranch one month prior to the full term. It was the defendant's contention that the Hornes failed to live up to certain promises contained in the contract to perform certain duties such as the building of the fence, the leaving of hay and potatoes, and remaining the full term.

The complaint alleged the execution of two ranching agreements, the three promissory notes and the chattel mortgage as well as the comprehensive assignment to the Bank by the Hornes

and sets forth these agreements as exhibits. The complaint further alleged that at the time of the execution of the chattel mortgage, the Hornes were the owners of an undivided one-half interest in and to the sheep, alleged the sale of the lambs and wool by the defendant, a demand for an accounting by the defendant and his repeated refusal and prayed that the plaintiffs have judgment for an accounting by the defendant and money judgment in favor of the Bank for the amount determined due from defendant. The defendant filed a motion to make more definite and certain, which was overruled; and then filed general and special demurrers which were likewise overruled.

The defendant in his answer admitted the existence of the agreements and admitted that on July 24, 1954, there were 1,-900 mixed lambs belonging to the defendant on his ranch. Defendant denied that the Hornes were at any time the owners of any interest in and to the lambs and denied generally the remaining allegations of the complaint. As an affirmative defense, the defendant alleged the abandonment of the ranch and premises prior to the end of the term, failure to perform the covenants and promises of the agreement, and neglect of ranch property and sheep, and alleged that this neglect and failure to live up to the contract occurred subsequent to the receipt of funds by the Hornes from the Bank. It is further alleged that the defendant accounted to the Hornes immediately after the sale of the lambs and demanded that the Hornes perform and comply with the contractual obligations entered into and further alleged that the Hornes neglected to perform or account to the defendant. The defendant further alleged that by reason of the Hornes' failure to comply with the provisions of the contract the defendant was damaged in excess of any amount owed by him to the Hornes and prayed that the Hornes be required to give accounting to the defendant and that the plaintiffs take nothing by their action.

The plaintiffs replied by an amended reply which asserted the

Hornes performed all of their obligations under the agreement until the 14th day of October 1954, and alleged that the actions of the defendant made it impossible for the Hornes to remain any longer on the premises.

The appellant, defendant below, specifies some nine errors. The first two specifications go to the pleadings themselves, particularly that the complaint, not stating performance in any manner, is fatally defective, that the demurrers should have been sustained, and the objections to the introduction of any evidence, because the complaint failed to state a cause of action, should have been granted.

The complaint does not contain an allegation of any kind alleging performance on the part of the Hornes, or any of them, either in full or in part. The contract itself, attached to the complaint as an exhibit, recites certain conditions precedent such as building fence, plowing land, leaving a specified amount of hay on the premises and the following quoted provision of the agreement, "IT IS FURTHER AGREED by and between the parties hereto that second parties must care for all of the leased sheep and premises, both real and personal, for the full term, up to an including November 15, 1954, before second parties shall be entitled to, or shall have earned, their one-half share of the gross revenue from the lambs and wool".

R.C.M. 1947, section 58-206, provides:

"*Condition precedent.* A condition precedent is one which is to be performed before some right dependent thereon accrues, or some act dependent thereon is performed."

R.C.M. 1947, section 58-209, provides:

"*Performance, etc., of conditions—when essential.* Before any party to an obligation can require another party to perform any act under it, he must fulfill all conditions precedent thereto imposed upon himself * * *."

Under the statutes there is no doubt that the clauses heretofore referred to were conditions precedent, and that the Hornes

were required to perform according to the contract before recovery could be had.

To state a cause of action on a contract of this nature, a plaintiff must allege the performance under the contract or set forth facts excusing his failure to perform. This rule was set out in Harris v. Root, 28 Mont. 159, 165, 72 Pac. 429, 431, as follows:

"The action of the court in sustaining the defendants' objection to the evidence presents for decision the question whether the allegations in the complaint which we have stated in substance warrant recovery by the plaintiff. The complaint declares upon the contract, and unless it appears therefrom that the plaintiff's intestate fully performed the contract on his part, or facts and circumstances are alleged justifying a failure in any particular, a recovery cannot be had."

This rule from the Harris v. Root case, supra, has been reiterated by this court in Chealey v. Purdy, 54 Mont. 489, 492, 171 Pac. 926; Sutton v. Lowry, 39 Mont. 462, 474, 104 Pac. 545; Broat Lumber Co. v. Van Houten, 66 Mont. 478, 480, 213 Pac. 1116; Binzel v. Viehmann, 111 Mont. 6, 106 Pac. (2d) 187; Pioneer Engineering Works, Inc. v. McConnell, 123 Mont. 171, 184, 212 Pac. (2d) 641.

There is no question but what the plaintiff, First National Bank, under the purported assignment from the Hornes, stood in the same position as the plaintiffs Horne in this particular. But see in Dahlhjelm Garages, Inc. v. Mercantile Insurance Co., 149 Wash. 184, 270 Pac. 434, 436.

The respondent, the Bank and the Hornes, assert that the failure to allege performance under the contract or partial performance with an excuse for failure to fully perform, does not apply in this case because it is an equity action. Respondent cites the rule laid down in 1 C.J.S. Accounting, section 38, page 670, as follows:

"*Accounting under contract.* Where a contract is the foundation of plaintiff's right to an accounting, he must allege such

contract, and its provisions, and state facts bringing the case within such provisions; *but an allegation that the contract was fully performed is not essential."* Emphasis supplied.

Also respondents cite 2 Bancroft's Code Pleading, Accounts and Accounting, sections 766 and 767, pages 1085,1087.

Under both of the foregoing authorities, the case of Woodford v. Kelly, 18 S.D. 615, 101 N.W. 1069, is cited as authority for the rule. Also as authority for the rule the respondents cite Olson v. Harvey, 68 Colo. 180, 188 Pac. 751, at page 754. These two cases do not represent the law in Montana even if the rule as suggested by the authorities of C.J.S. and Bancroft's Code Pleading are accepted as being established by the cases. An examination of both cases indicates that the complaints alleged at least partial performance with an excuse for failure to perform fully.

The respondents' argument is in effect that a different rule of pleading prevails in an action in equity for accounting, than in an action at law based upon a contract. In this jurisdiction, so far as pleadings are concerned, there is no distinction between law and equity. Article VIII, section 28, Montana Constitution. And see Donovan v. McDevitt, 36 Mont. 61, 65, 92 Pac. 49.

In Chealey v. Purdy, 54 Mont. 489, 491, 171 Pac. 926, 927, this court said: "Whatever may be the nature of the cause of action upon which a plaintiff seeks to recover, he must allege in his complaint facts disclosing the presence of all the elements necessary to make it out. * * * These rules apply to all actions, whatever their nature, for the provisions of the Codes on the subject of pleadings cited supra furnish the exclusive guide as to what pleadings are required or are permitted in this jurisdiction."

We hold then that under the Montana statutes and cases, it was necessary for plaintiffs to show that they were entitled to some money from defendant and for an accounting by defendant. In order to do this under the contract that was

attached to the complaint, it was necessary to allege performance under the contract or at least partial performance with an excuse for failure to fully perform. The fulfillment of the conditions precedent, established by the contract, became a necessary part of the complaint. The demurrer of the defendant was well-taken and it was error for the court to overrule it.

As previously related, the plaintiffs, on the day of the trial, ▆ filed an amended reply which, for the first time, alleged performance by the plaintiffs Horne for a period of the term of the agreement and alleged that the action of the defendant had made it impossible for the plaintiffs Horne to render full performance of their agreement. However, this reply does not in any way remedy the fatal defect of the complaint by supplying the omissions.

In Thornton v. Kaufman, 35 Mont. 181, 184, 88 Pac. 796, 797, this court said:

"Counsel for respondents contend, however, that the decision and judgment of the court cures the defects in the complaint, and that the judgment ought to be allowed to stand, especially so since the replication contains both the allegations lacking in the complaint. The reply to this is that under the rules of pleading the replication is responsive to the new matter or counterclaim alleged in the answer, and, while its allegations may in a particular instance aid the answer, they may not in any case aid the complaint. This was the rule at the common law, as it is also under the Code. [Citing cases.]

"The complaint not being aided by the reply, the omission to state therein facts essential to make out a cause of action is not cured by the decision and judgment, and the question of its sufficiency may be presented at any time during the progress of the case." See also Waite v. C. E. Shoemaker & Co., 50 Mont. 264, 146 Pac. 736; State ex rel. Barron v. District Court, 119 Mont. 344, 174 Pac. (2d) 809; Crenshaw v. Cren-

shaw, 120 Mont. 190, 182 Pac. (2d) 477; Manuel v. Turner, 36 Mont. 512, 93 Pac. 808.

Since the foregoing discussion disposes of the appeal and requires us to reverse and set aside the judgment of the district court, and since the plaintiffs may amend their complaint in order to properly state a cause of action, we have examined other specifications of error by the appellant to determine whether or not rulings thereon should be made at this time. The specifications of error reveal that the points of objection were either not properly presented to the trial court or not properly saved and it appearing that the same questions may not arise on subsequent trial, we are not disposed to discuss them at this time.

Because of what has been said herein, the judgment is reversed.

MR. CHIEF JUSTICE HARRISON, MR. JUSTICES ADAIR and THE HONORABLE GUY C. DERRY, District Judge, sitting in place of MR. JUSTICE BOTTOMLY, concur.

MR. JUSTICE ANGSTMAN dissenting:

I think my associates are in error in holding that the covenants referred to in the contract are conditions precedent to the right of recovery of any amount as stated, or at least inferred, in the opinion of Mr. Justice Castles.

Courts are "disinclined to construe stipulations in a contract as conditions precedent, unless compelled to do so by language of the contract plainly expressed, where so to do would result in injustice." 17 C.J.S., Contracts, section 338, page 794. In doubtful cases stipulations are construed as covenants rather than conditions precedent. Murphy v. Schuster Springs Lumber Co., 215 Ala. 412, 111 So. 427.

Even as to conditions precedent the rule is not as strict as my associates hold. Section 17-809, R.C.M. 1947, of our statute provides:

"Specific performance cannot be enforced in favor of a party who has not fully and fairly performed all the conditions precedent on his part to the obligation of the other party, except where his failure to perform is only partial, and either entirely immaterial, or capable of being fully compensated; in which case specific performance may be compelled, upon full compensation being made for the default."

There are many ill-considered opinions which have announced the rule that there can be no recovery on a contract which has only been partially performed. They are listed in 17 C.J.S., Contracts, section 511, page 1093. But in my opinion the better-reasoned cases, under facts such as we have here, support the contrary rule stated by the same author in the same section of C.J.S. wherein it is stated:

"However, in such cases, where the part performance has been beneficial to the other party and he has accepted and retained the benefits thereof, the party partially performing is entitled to recover either the reasonable value of such performance or the contract price pro tanto, subject to the reciprocal right of the other party to recoup such damages as he has suffered from the failure of plaintiff to perform fully". The cases there cited support the text.

Thus in Gibson Co. v. Morton, 88 Ind. App. 685, 148 N.E. 430, 433, the court said:

"The general rule is that a party cannot recover upon a special contract which he had failed to fulfill on his part, but there is another well-established rule to the effect that, where the plaintiff's agreement or stipulation constitutes only a part of the consideration of the defendant's agreement, and the defendant has actually received a partial benefit, and the breach on the part of the plaintiff may be compensated in damages, an action may be maintained on the contract without showing strict performance. Deep Vein Coal Co. v. Jones, 49 Ind. App. 314, 97 N.E. 341."

In White Star Coal Co. v. Pursifull, 186 Ky. 697, 703, 217 S.W. 1020, 1023, the court stated:

"But, independent of these considerations, it may be confidently stated that the law in some cases permits the contractor to recover for part performance the contract price *pro tanto* for the finished portion of the work where the other party accepts it and is benefited thereby. Illustrating, if A. contracts with B. to manufacture and deliver 10 wagons of certain specifications, and B. manufactures five of them according to specifications, and delivers them to A., who accepts them, B. can recover the contract price for the five wagons, subject to whatever damage A. might sustain by reason of B.'s failure to manufacture the other five."

See also the cases cited under note 11 in 17 C.J.S., Contracts, section 511, page 1094, including that of Woodford v. Kelley, 18 S.D. 615, 101 N.W. 1069, relied on specifically by plaintiffs here. Our statute, section 17-809, supra, reflects the rule followed in those cases. Any other result would operate as a forfeiture. Can it be that where plaintiffs have cared for the sheep eleven months, they cannot recover because they failed to care for them the remaining month? Forfeitures are not favored in law or equity. Section 17-102 provides:

"Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent willful, or fraudulent breach of duty."

In my opinion the complaint states facts sufficient to constitute a cause of action.

Defendant of course has the right to reduce the contract price by pleading and proving affirmative defenses or off-sets.

The cases of Harris, Adm'r v. Root, 28 Mont. 159, 72 Pac. 429, and Sutton v. Lowry, 39 Mont. 462, 104 Pac. 545, were cases to recover contingent attorney's fee and, of course, un-

less the contingency has been met there can be no recovery. Those cases differ widely from the case at bar.

The case of Broat Lumber Co. v. Van Houten, 66 Mont. 478, 213 Pac. 1116, was one involving a condition precedent. That was also true of Binzel v. Viehmann, 111 Mont. 6, 106 Pac. (2d) 187. The other cases relied on in the majority opinion are likewise readily distinguishable.

The rule applicable here is stated in 1 C.J.S., Accounting, section 38(3), page 670, as follows:

"*Accounting under contract*. Where a contract is the foundation of plaintiff's right to an accounting, he must allege such contract, and its provisions, and state facts bringing the case within such provisions; but an allegation that the contract was fully performed is not essential." To the same effect is 2 Bancroft's Code Pleading, Accounts and Accounting, section 766.

Also, in this case as stated in the majority opinion, the amended reply alleged that the action of defendant made it impossible for plaintiffs Horne to render full performance of the contract.

I do not believe this allegation is needed to bolster the complaint. I believe it is responsive to the new matter or affirmative defense alleged in the answer within the meaning of Thornton v. Kaufman, 35 Mont. 181, 88 Pac. 796.

The record does not contain any objection to the reply as constituting a departure from the allegations of the complaint. Had it done so plaintiff might have seen fit to amend the complaint. The case was tried as if the reply was responsive to the new matter or affirmative defense.

The evidence, to the effect that defendant's actions made it impossible for the Hornes to render full performance of the contract, went in without objection on the ground of variance and without objection on any other ground. In fact, that evidence was brought out by counsel for defendant on the cross examination of plaintiffs Horne. Certainly defendant is in no position to contend that he was prejudicially affected by such evidence. Furthermore under the facts here, and particu-

larly in a case tried to the court without a jury, the complaint, if it lacks sufficient facts, will be deemed to have been amended to conform to the proof. I think the complaint was sufficient. Other questions have been raised by appellant, but since they are not considered in the majority opinion it would be pointless for me to consider them.