THE FIRST NATIONAL BANK OF WHITE SULPHUR SPRINGS, a Banking Corporation, J. W. HORNE, JAMES JAY HORNE, and WALTER RAY HORNE, Plaintiffs and Respondents. v. SAM STOYANOFF, Defendant and Appellant.

No. 10542

Submitted January 15, 1964. Decided February 14, 1964.
Rehearing denied April 8, 1964.

390 P.2d 448.

Patrick F. Hooks (argued), Townsend, for appellant.
Stanley P. Sorenson (argued), Helena, for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment in an action for account-

ing on a contract brought by the plaintiffs and respondents against the defendant and appellant. This is the second time this action has been before this court, the first appeal having resulted in a reversal by this court of the district court's judgment in favor of the plaintiffs in First National Bank of White Sulphur Springs v. Stoyanoff, 137 Mont. 20, 349 P.2d 1016.

Following the entry of the decision on the prior appeal, the plaintiffs filed an amended complaint in the district court, the defendant filed an amended answer, and a new trial was had without a jury. At the conclusion of the trial, proposed findings of fact and conclusions of law were submitted by both parties. Thereafter, the district court made its findings and conclusions and judgment was entered in favor of the plaintiff, First National Bank, in the sum of $8,332.30 with interest and costs.

The facts giving rise to this action are as follows:

The plaintiff, J. W. Horne, is the father of the other plaintiffs, James and Walter Horne. Hereafter they shall be referred to collectively as simply the Hornes. Stoyanoff, the defendant and appellant here, will be referred to as defendant. The plaintiff First National Bank will be referred to as the Bank.

Defendant was the owner of a sheep ranch in Meagher County and on November 15, 1952, he entered into a one-year lease and management agreement with the Hornes, whereby the defendant leased to the Hornes his sheep ranch, certain designated farm machinery and turned over to the Hornes the care and custody of 2,460 sheep. The Hornes entered into possession of the ranch and the parties evidently operated satisfactorily under this agreement during the farm year of 1953 as no controversy arose during this period.

On October 12, 1953, the parties entered into another agreement, with certain modifications, renewing the prior agreement for another year until November 15, 1954. Under the renewed agreement, the Hornes continued in possession of the

premises and custody of the personal property. They covenanted and agreed to care for the sheep, put up the hay crop, plant certain grain crops and generally to care for the defendant's ranch and personal property in a careful manner according to sound ranching practices. In return, the Hornes were to receive one-half of the gross revenue from the sale of the lamb crop and the wool, defendant having the right of sale. To provide the Hornes with operating expense monies, the defendant agreed to advance the sum of $150 per month; reimbursement to be made to the defendant for these advancements from the first monies received from the sale of the wool and lamb crop. The agreement expressly provided that the Hornes could not assign any interest in the agreement or sublet the premises, and the Hornes were required to care for the property, both real and personal, for the full term up to and including the 15th day of November 1954, before they would be entitled to their share of the gross revenue from the lambs and the wool. Additionally, the Hornes were obligated to perform certain specific tasks such as the building of one and three-quarter miles of fence on the premises, provide the defendant with forty sacks of potatoes at the termination of the agreement, and to leave upon the premises at the termination date an amount of baled hay equal in amount to that turned over to the Hornes on November 15, 1952.

The Hornes continued in possession of the premises during the winter of 1953-1954, and in March of 1954 the defendant, with the consent of the Hornes, contracted the lambs for fall delivery. During the 1954 season the defendant advanced to the Hornes the total sum of $7,385.51. It is undisputed that the defendant sold the 1954 wool crop and the 1954 lamb crop, receiving the gross amount of $34,783.62. No full accounting was had between the parties.

Early in 1954, the Hornes borrowed from the Bank, the other plaintiff, certain amounts of money, amounting to $4,500. In return, the Bank after viewing the aforementioned man-

agement contract between the Hornes and the defendant Stoyanoff took promissory notes from the Hornes in the usual form; and the Hornes purported to execute a chattel mortgage to the Bank as security for the note and further advances. The chattel mortgage purported to cover an undivided one-half interest in and to 1,900 mixed lambs located on the defendant's ranch. Subsequently after the termination of the agreement, and after a failure to arrive at an accounting between the parties, the Bank took from the Hornes an assignment to all their right and interest under the contract with defendant. This suit followed, the parties thereto being as above stated.

An amended complaint was filed which was identical to the complaint in the previous action, except for additional allegations which will be hereinafter set forth. The complaint alleged the execution of two ranching agreements, promissory notes and chattel mortgage as well as the comprehensive assignment to the Bank by the Hornes and set forth the agreements as exhibits. The complaint then added the following allegations:

"That the plaintiffs, J. W. Horne, James J. Horne and Walter Ray Horne, performed all of their obligations under the said agreements and more, excepting where the defendant Stoyanoff requested or required additional or other work in lieu of that set forth in said agreements up until on or about the 15th day of October, 1954, when, as a result of the actions of the defendant Sam Stoyanoff the plaintiffs Horne were forced to and did leave the ranch property of the defendant Stoyanoff. That said acts consisted of a consistent refusal on the part of the defendant Stoyanoff to account to the plaintiffs Horne for the proceeds of the sale of sheep and wool, a consistent refusal to cooperate in any way with the plaintiffs Horne under the said agreements, and consistent acts and actions on the part of said defendant rendering a continued stay by the plaintiffs Horne upon the ranch of the defendant intolerable and impossible. That at all times up to the said

date the plaintiffs Horne performed their said duties under said agreement and cared for the said ranch and sheep in a good and ranch-like manner and according to said agreements. That the defendant Stoyanoff accepted the said performance of the plaintiffs Horne as hereinbefore alleged and retained and retains the benefits thereof but refused and still refuses, as hereinafter alleged, to perform the promises of said agreements on his part to be kept and performed."

Defendant answered denying the new allegations and setting forth as an affirmative defense that the plaintiffs Horne, without cause or provocation on the part of the defendant, had voluntarily abandoned and vacated the real property and relinquished possession and control of the livestock in violation of the express covenants and provisions of the agreements. Defendant also alleged that the plaintiffs Horne had wilfully failed and refused to do and perform certain obligations.

The specifications of error are fourteen in number. In our view, however, the problem may be expressed as: Does the district court's findings of fact and conclusions support the judgment, or stated another way are the findings and conclusions consistent with the law of the case as established by our previous opinion and by the pleadings and evidence submitted?

To appreciate our discussion, it is necessary to quote parts of our prior opinion, First Nat. Bank of White Sulphur Springs v. Stoyanoff, supra, 137 Mont. 20, at pp 25, 26, 28, 349 P.2d 1016, at p. 1018. We said:

"The complaint does not contain an allegation of any kind alleging performance on the part of the Hornes * * *. The contract * * * recites certain conditions precedent such as building fence, plowing land, leaving a specified amount of hay on the premises and the following quoted provision of the agreement, 'IT IS FURTHER AGREED * * * that [Hornes] must care for all of the leased sheep and premises, both real and personal, for the full term, up to and including November 15, 1954, before

second parties shall be entitled to, or shall have earned, their one-half share of the gross revenue from the lambs and wool.'

&ast; &ast; &ast; &ast; &ast;

"Under the statutes there is no doubt that the clauses heretofore referred to were conditions precedent, and that the Hornes were required to perform according to the contract before recovery could be had.

"To state a cause of action on a contract of this nature, a plaintiff must allege the performance under the contract or set forth facts excusing his failure to perform. &ast; &ast; &ast;

"As previously related, the plaintiffs, on the day of the trial, filed an amended reply which, for the first time, alleged performance by the plaintiffs Horne for a period of the term of the agreement and alleged that the action of the defendant had made it impossible for the plaintiffs Horne to render full performance of their agreement. However, this reply does not in any way remedy the fatal defect of the complaint by supplying the omissions."

We permitted the plaintiffs to amend the complaint on a new trial. A reading of Mr. Justice Angstman's dissent reveals the reasons. While we are not to be considered as approving the attempt to amend the complaint here so as to approve the complaint, nonetheless we shall for the purposes of this opinion consider the complaint to have stated a cause of action.

Taking the allegations at their best, it is alleged that Hornes had performed all of their obligations up to the 15th of October, 1954, when they were forced to leave by actions of defendant. These alleged actions were:

(1) An alleged refusal on the part of Stoyanoff to account;

(2) Acts on the part of Stoyanoff making Hornes' continued stay intolerable; and

(3) A refusal by Stoyanoff to cooperate.

These were the allegations, but there was simply no proof of any of them. To the contrary the proof was to the opposite. Apparently recognizing this, plaintiffs submitted proposed

findings which were adopted by the Court, set out in part as follows:

"V.  That the said plaintiffs Horne substantially complied with their agreement and performed it in a substantial manner.

"VI.  That the plaintiffs failed and refused to build certain fences * * *.

"VII.  That the plaintiffs Horne failed and refused to leave * * * hay * * *.

"X.  That the defendant Stoyanoff suffered no damage by reason of the plaintiffs removing from his ranch one month before termination of the lease.

"XI.  That the plaintiffs Horne had substantially performed their contract."

From what we have previously discussed, and from our quotations from the previous opinion, it is clear that a completely different case is decided than that which was presented by the pleadings and tried. It is also clear that what we discussed in the previous opinion as conditions precedent appearing in the language of the contract plainly expressed, have been found not to have been performed nor any legal excuse found for failure to perform.

What we said in the first opinion is the law of the case. (See Estate of Stoian, 138 Mont. 384, 357 P.2d 41, and cases cited therein.) We point out again that the terms of the contract were specific, plainly written, easily understood, and were the very essence of the agreement.

Respondents urge, however, that had this court meant what it said in the previous opinion, it would not have permitted an amended complaint. However, the amended complaint belies this argument because it alleges, as previously quoted, legal excuses for non-performance—not on any theory of *substantial performance* as finally was determined here.

In Franklin v. Schultz, 23 Mont. 165, 168, 57 P. 1037, 1038, before the turn of the century, this court stated:

"This is not an action to recover what the services and ma-

terials were reasonably worth. It is to recover the agreed price fixed by an express contract in writing. The evidence does not tend to prove a substantial performance by the plaintiff of the contract; nor, under the circumstances, can it successfully be maintained that the failure to plaster, or the omission to build the flue, was unintentional or a mere oversight. The plaintiff may lawfully insist upon payment only when the conditions on which payment is due have been performed. 'While slight and insignificant imperfections or deviations may be overlooked on the principle of *"De minimis non curat lex,"* the contract in other respects must be performed according to its terms. When the refusal to proceed is willful, the difference between substantial and literal performance is bounded by the line of *de minimis. * * * Substantial performance is not sufficient, except when it is understood as excluding only such unsubstantial differences as the parties are presumed not to have had in contemplation when they made the contract.'* Van Clief v. Van Vechten, 130 N.Y. 571, 29 N.E. 1017." Emphasis supplied.

It follows, then, that where as here, the judgment is not supported by findings and conclusions which are in themselves inconsistent with the law of the case and the theory of the pleadings and evidence, the judgment must be reversed.

The judgment is reversed and the case dismissed with costs.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN C. HARRISON, ADAIR and DOYLE concur.